# 23-2322

# United States Court of Appeals
### for the
# Eighth Circuit

---

DEVIN G. NUNES, NUSTAR FARMS, LLC, ANTHONY NUNES, JR. and ANTHONY NUNES, III,

*Plaintiffs-Appellants,*

– v. –

RYAN LIZZA and HEARST MAGAZINE MEDIA, INC.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

# OPENING BRIEF OF APPELLANTS

STEVEN S. BISS
LAW OFFICE OF STEVEN S. BISS
300 West Main Street, Suite 102
Charlottesville, VA 22903
(804) 501-8272
stevenbiss@earthlink.net
*Counsel for Plaintiffs-Appellants*

WILLIAM F. McGINN
McGINN LAW FIRM
20 North 16th Street
Council Bluffs, Iowa 51501
(712) 328-1566
bmcginn@themcginnlawfirm.com
*Counsel for Plaintiffs-Appellants*

# SUMMARY OF THE CASE

This is a consolidated action by former Congressman Devin G. Nunes ("Devin Nunes") and NuStar Farms, LLC, Anthony Nunes, Jr. and Anthony Nunes, III (the "NuStar Plaintiffs") for defamation and defamation by implication. 36 days before the 2018 Congressional election, Hearst Magazine Media, Inc. ("Hearst") published a "BOMBSHELL POLITICAL" article in its *Esquire* magazine written by "chief political correspondent" Ryan Lizza ("Lizza"), entitled, "***Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret***" (the "Article"). The Article falsely accused the NuStar Plaintiffs of knowingly hiring undocumented labor on their dairy farm in Sibley, Iowa, which is a federal crime. The Article further implied that Devin Nunes, a United States Congressman and then-Chairman of the House Permanent Select Committee on Intelligence, conspired or colluded with the NuStar Plaintiffs and former Iowa Representative Steve King to hide or cover-up the fact that NuStar employed undocumented labor. [*Nunes v. Lizza*, 12 F.4th 890 (8th Cir. 2021]. The District Court ignored the standard of review and in large part ignored the evidence presented, granting summary judgment to Hearst and Lizza.

This case involves serious issues of media misconduct. In order to address the many issues raised on appeal, Appellants respectfully request, and the Court should permit, oral argument not to exceed 30 minutes.

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

DEVIN G. NUNES *et al.*      )
                                   )
      Appellants,       )
                                   )
v.                             )       <u>Appeal No. 23-2322</u>
                                   )
                                   )
RYAN LIZZA *et al.*        )
                                   )
      Appellees.       )
_____)

# <u>CORPORATE DISCLOSURE STATEMENT</u>

Plaintiff-Appellant, NuStar Farms, LLC ("NuStar"), by counsel, pursuant to Rule 26.1(a) of the Federal Rules of Appellate Procedure and 8th Circuit R. 26.1A, hereby discloses that it has no parent corporation and that no publicly held corporation owns any of its stock.

DATED:    August 10, 2023

# TABLE OF CONTENTS

Page No.

Table of Authorities ……………………………………... iii

Jurisdictional Statement ………………………………… 1

Statement of the Issues ………………………………….. 2

Statement of the Case ………………………………… 17

    The First Appeal ………………………………….. 18

    Proceedings on Remand …………………………….. 19

Facts Relevant To The Issues Submitted For Review …................... 21

Summary of the Argument ………………………………… 24

Standard of Review ………………………………………… 28

Argument ………………………………………………... 29

    A.    THERE ARE GENUINE ISSUES OF MATERIAL
        FACT …………………………………………… 29

        1.    Falsity …………………………………….. 33

        2.    Opprobrium ……………………………… 40

        3.    Negligence ………………………………... 42

        4.    California Law Does Not Apply ……………… 45

        5.    Hearst Is Liable For Lizza's Republications …... 47

        6.    Lizza Intended to Convey A Defamatory
            Implication …………………………………….. 49

i

      7.     Devin Nunes's Damages ………………………     49

    B.     PRECLUSION OF THE DISCLOSED WITNESSES .     54

Conclusion and Request for Relief ………………………………     56

Local Rule 28A(h) Statement ………………………………………     56

Certificate of Service ……………………………………………….     58

Certificate of Filing and Compliance ……………………….....     59

Appellate Case: 23-2322    Page: 5    Date Filed: 08/11/2023 Entry ID: 5304985

# <u>TABLE OF AUTHORITIES</u>

<u>Page No.</u>

Rule 26(a)(1) of the Federal Rules of Civil Procedure …………….        20

Rule 37(c)(1) of the Federal Rules of Civil Procedure …………….        20

Rule 56 of the Federal Rules of Civil Procedure …………………...        Pass.

Rule 702 of the Federal Rules of Evidence ………………………...        3

8 U.S.C. § 1324a …………………………………………………...        40

18 U.S.C. § 2 ……………………………………………………….        40

18 U.S.C. § 371 …………………………………………………….        40

28 U.S.C. § 1291 …………………………………………………        1

28 U.S.C. § 1332 …………………………………………………        1

*Alberghetti v. Corbis Corp.*,
        713 F.Supp.2d 971 (C.D. Cal. 2010) ………………………...        12

*Anderson v. Liberty Lobby, Inc.*,
        477 U.S. 242 (1986) ………………………………………        2,4

*Anderson v. Viking Pump Div., Houdaille Indus., Inc.*,
        545 F.2d 1127 (8th Cir. 1976) ……………………………….        29

*Atzen v. Atzen*,
        913 N.W.2d 628 (Iowa App. 2018) ………………………….        52

*Aziz v. Wright*,
        34 F.3d 587 (8th Cir. 1994) ………………………………….        52

*Ballengee v. CBS Broadcasting, Inc.*,
        331 F.Supp.3d 533 (S.D. W.Va. 2018) ……………………...        14

Appellate Case: 23-2322     Page: 6     Date Filed: 08/11/2023 Entry ID: 5304985

|  | Page No. |
|---|---|
| *Behr v. Meredith Corp.*, 414 N.W.2d 339 (Iowa 1987) ………………………………. | Pass. |
| *Belcher v Little*, 315 N.W.2d 734 (Iowa 1982) ………………………………. | 45 |
| *Blankenship v. Napolitano*, 451 F.Supp.3d 596 (S.D. W. Va. 2020) …………………….. | 40,41 |
| *Brown v. First Nat'l Bank of Mason City*, 193 N.W.2d 547 (Iowa 1972) ………………………………. | 6,47 |
| *Burger v. McGilley Memorial Chapels, Inc.*, 856 F.2d 1046 (8th Cir. 1988) ………………………………. | 14 |
| *Campbell v. Quad City Times*, 547 N.W.2d 608 (Iowa App. 1996) ………………………… | 8,33 |
| *Cawthorn v. Catholic Health Initiatives Iowa Corp.*, 743 N.W.2d 525 (Iowa 2007) ………………………………. | 52 |
| *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ………………………………………. | 4 |
| *Christoff v. Nestle USA, Inc.*, 47 Cal.4th 468, 97 Cal.Rptr.3d 798, 213 P.3d 132 (2009) …… | 12 |
| *Colborn v. Netflix, Inc.*, 2023 WL 2482620 15 (E.D. Wis. 2023) …………………….. | 7 |
| *Cockram v. Genesco, Inc.*, 680 F.3d 1046 (8th Cir. 2012) ……………………………….. | Pass. |
| *Davis v. Costa-Gavras*, 580 F.Supp. 1082 (S.D.N.Y. 1984) ………………………….. | 11,46 |
| *Doe v. Hagar*, 765 F.3d 855 (8th Cir. 2014) ………………………………………… | 29 |

Appellate Case: 23-2322     Page: 7     Date Filed: 08/11/2023 Entry ID: 5304985

*Forth Worth Press Co. v. Davis*,
  96 S.W.2d 416 (Tex.App.-Forth Worth 1936) ……………… 41

*Franklin Prescriptions, Inc. v. The New York Times Co.*,
  267 F.Supp.2d 425 (E.D. Pa. 2003) ………………………… 9

*Fuqua Homes, Inc. v. Beattie*,
  388 F.3d 618 (8th Cir. 2004) ……………………………….. 47

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) ……………………………………….. 51

*Gibson v. ITT Hartford Ins. Co.*,
  621 N.W.2d 388 (Iowa 2001) ……………………………… 52

*Gruttemeyer v. Transit Auth.*,
  31 F.4th 638 (8th Cir. 2022) ……………………………… 55

*Harte-Hanks Communications, Inc. v. Connaughton*,
  491 U.S. 657 (1989) ……………………………………….. 31

*Hartnagel v. Norman*,
  953 F.2d 394 (8th Cir. 1992) ……………………………….. 4

*Hoffmann v. Clark*,
  975 N.W.2d 656 (Iowa 2022) ……………………………… 51

*Hovey v. Iowa State Daily Publication Bd., Inc.*,
  372 N.W.2d 253 (Iowa 1985) ……………………………..... 33

*Johnson v. J.P. Morgan Chase Bank*,
  2009 WL 382734 (E.D. Cal. 2009) ………………………… 6

*Jones v. Palmer Communications, Inc.*,
  440 N.W.2d 884 (Iowa 1989) ……………………………… 5,51

*Kelly v. Iowa State Educ. Ass'n*,
  372 N.W.2d 288 (Iowa App. 1985) ………………………... 15

Appellate Case: 23-2322   Page: 8   Date Filed: 08/11/2023 Entry ID: 5304985

|  | Page No. |
|---|---|

*Kinsey v. New York Times Company*,
991 F.3d 171 (2nd Cir. 2021) ………………………….. 10

*Larue v. Brown*,
235 Ariz. 440, 333 P.3d 767 (2014) ………………………... 13

*Lundell Mfg. Co., Inc.*
*v. American Broadcasting Companies, Inc.*,
98 F.3d 351 (8th Cir. 1996) …………………………………. 54

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ……………………………………… 2

*McKinney v. County of Santa Clara*,
110 Cal.App.3d 787, 168 Cal.Rptr. 89 (1980) ……………… 6,47

*Mercer v. City of Cedar Rapids*,
104 F.Supp.2d 1130 (N.D. Iowa 2000) ……………………... 3,5

*Morris v. Chillicothe*,
512 F.3d 1013 (8th Cir. 2008) ………………………………….. 29

*Moore v. Sun Pub. Corp.*,
118 N.M. 375, 881 P.2d 735 (1994) ………………………… 14

*Nelle v. WHO Television, LLC*,
342 F.Supp.3d 879 (S.D. Iowa 2018) ……………………….. 5

*New York Times v. Sullivan*,
376 U.S. 254 (1964) ……………………………………… 29

*Newell v JDS Holdings, LLC*,
834 N.W.2d 463 (Iowa. App. 2013) ………………………... 7

*Nix v. Major League Baseball*,
62 F.4th 920 (5th Cir. 2023) …………………………………. 10

Appellate Case: 23-2322    Page: 9    Date Filed: 08/11/2023 Entry ID: 5304985

Page No.

*Nunes v. Lizza*,
    12 F.4th 890 (8th Cir. 2021) ……………………………….    Pass.

*Olson v. City of North Liberty*,
    451 F.Supp.3d 1010 (S.D. Iowa 2020) ……………………..    Pass.

*Pension Advisory Group, Inc. v. Fidelity Security Life Ins. Co.*,
    2020 WL 1181256
    (Tex.App-Corpus Christi-Edinburg 2020) …………………    8

*Perez v. CRST International, Inc.*,
    355 F.Supp.3d 765 (N.D. Iowa 2018) ……………………...    45,46

*Petersen v. Pan Am. Railways, Inc.*,
    2015 WL 2451227 (N.D.N.Y. 2015) ………………………    16

*Poller v. Columbia Broad. Sys., Inc.*,
    368 U.S. 464 (1962) …………………………………………...    28

*Quick v. Donaldson Co.*,
    90 F.3d 1372 (8th Cir. 1996) ………………………………..    2

*Robert Johnson Grain Co. v. Chem. Interchange Co.*,
    541 F.2d 207 (8th Cir. 1976) ………………………………..    28

*Rudin v. Dow Jones & Co. Inc.*,
    510 F.Supp. 210 (S.D.N.Y. 1981) …………………………..    46

*Ryan v. Arneson*,
    422 N.W.2d 491 (Iowa 1988) ……………………………….    52

*Sandoval v. Does 1-3*,
    571 F.Supp.3d 473 (E.D.N.C. 2021) ………………………..    14

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ………………………………..    10,11

Appellate Case: 23-2322   Page: 10   Date Filed: 08/11/2023 Entry ID: 5304985

|  | Page No. |
|---|---|
| *Schlegel v. Ottumwa Courier*,<br>585 N.W.2d 217 (Iowa 1998) …………………………… | 50 |
| *Scott v. Harris*,<br>550 U.S. 372 (2007) ……………………………………….. | 29 |
| *Shively v. Bozanich*,<br>31 Cal.4th 1230, 7 Cal.Rptr.3d 576, 80 P.3d 676 (2003) …… | 6 |
| *Smith v. Des Moines Public Schools*,<br>259 F.3d 942  (8th Cir. 2001) ……………………………….. | 3 |
| *Spencer v. Peters*,<br>2012 WL 6608616 (W.D. Wash. 2012) …………………… | 16,17 |
| *Stevens v. Iowa Newspapers, Inc.*,<br>728 N.W.2d 823 (Iowa 2007) …………………………… | 30 |
| *Tomblin v. WCHS-TV8*,<br>434 Fed.Appx. 205 (4th Cir. 2011) ………………………… | 7,8 |
| *Unsworth v. Musk*,<br>2019 WL 8220721 (C.D. Cal. 2019) ……………………… | 12,13 |
| *Wegener v. Johnson*,<br>527 F.3d 687 (8th Cir. 2008) ……………………………….. | 16,55 |
| *Wilson v. IBP, Inc.*,<br>558 N.W.2d 132 (Iowa 1006) …………………………… | 52 |
| *Wilson v. Myers*,<br>823 F.2d 253 (8th Cir. 1987) ……………………………….. | 28 |
| *Windsor v. Bethesda Gen. Hosp.*,<br>523 F.2d 891 (6th Cir. 1975) ……………………………….. | 28 |
| *Wright v. Keokuk County Health Center*,<br>399 F.Supp.2d 938 (S.D. Iowa 2005) ……………………… | 33 |

Appellate Case: 23-2322     Page: 11     Date Filed: 08/11/2023 Entry ID: 5304985

*Yeager v. Bowlin*,
    693 F.3d 1076 (9th Cir. 2012) ………………………………    12

Restatement (Second) Conflicts of Laws § 150(2) (1977) ………..    46

50 Am.Jur.2d *Libel and Slander* § 2 (1995) ………………………    50

Dan B. Dobbs et al., *Prosser & Keeton on the Law of Torts*
    § 116 (5th ed. Supp. 1988) …………………………………    30

Appellate Case: 23-2322    Page: 12    Date Filed: 08/11/2023 Entry ID: 5304985

# JURISDICTIONAL STATEMENT[1]

The basis of the District Court's subject matter jurisdiction is 28 U.S.C. § 1332 (diversity jurisdiction). [*App. 148, 170, 187, 217*; *R Doc. 103, at 5, ¶ 7*; *R Doc. 107, at 4, ¶ 7*; *R Doc. 188 (Case 4003), at 6, ¶ 10*; *R Doc. 193 (Case 4003), at 4, ¶ 10*].

The basis for the Court of Appeals' jurisdiction is 28 U.S.C. § 1291. On May 3, 2023, the District Court entered Judgment in accordance with its Memorandum Opinion and Order filed on April 25, 2023. [*App. 5008-5009*; *R Doc. 151, at 1-2*]. The District Court's Judgment is a final order.

On May 29, 2023, Devin Nunes and the NuStar Plaintiffs timely filed a joint notice of appeal to the United States Court of Appeals for the Eighth Circuit pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure ("FRAP"). Plaintiffs-Appellants appeal the District Court's Order granting Defendants' motion to preclude witnesses and its Order granting Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. [*App. 4893-4906, 4907-5007, 5010-5014*; *R Doc. 128, 149, 153*].

---

[1] Pursuant to 8th Cir. R. 28A(j), this Brief will refer to the Joint Appendix as "*App.*" and will cite to the specific page numbers of the Joint Appendix where the pleading, paper or document appears, *e.g., "App. 1"*. Where the Brief refers to a document that appears in both the Joint Appendix and the District Court docket, the Brief will include a parallel citation to both sources, *e.g., "App. 1*; *R Doc. 1 at 1, ¶ 1"*.

Appellate Case: 23-2322    Page: 13    Date Filed: 08/11/2023 Entry ID: 5304985

## STATEMENT OF THE ISSUES

Plaintiffs-Appellants present the following issues for review:

1.     Did the District Court err when it found there were no genuine issues of material fact, and that Hearst and Lizza were entitled to judgment as a matter of law? Fed. R. Civ. P. 56(a); *Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1052 (8th Cir. 2012) ("Because Cockram denies that she intentionally produced a return receipt with a racial slur, and produced evidence supporting this assertion, a genuine issue of material fact exists as to whether the gist of the first statement was true.").  Did the District Court properly apply the summary judgment standard, and view all facts in the light most favorable to Devin Nunes and the NuStar Plaintiffs and give these non-moving parties the benefit of all reasonable inferences that can be drawn from the facts? *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"); *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-1377 (8th Cir. 1996) (the Judge's function at the summary judgment stage is solely to determine whether there is sufficient disagreement to require submission to a jury).

2.     Did the District Court err when it found there was no genuine issue of material fact as to whether the defamatory statements about the NuStar Plaintiffs

2

were false [*App. 4979-4983*; *R Doc. 149, at 73-77*], where the NuStar Plaintiffs denied they knowingly employed undocumented labor and where their position was fully supported by the testimony of immigration attorney Amanda Bahena and by the expert testimony of Clete Samson admissible in evidence under Rule 702 of the Federal Rules of Evidence and Fed. R. Civ. P. 56(c)? [*App. 4186-4188*; *R Doc. 130, at 11-13*]. Because the underlying facts regarding the defamatory implication of a conspiracy were disputed by Hearst and Lizza, was the question of falsity one for the Jury? *Smith v. Des Moines Public Schools*, 259 F.3d 942, 947 (8th Cir. 2001) ("the District fails to recognize that when the underlying facts regarding the allegedly defamatory remarks are disputed, the question of substantial truth must be submitted to a jury … [T]here was substantial evidence in the record from which a reasonable jury could have concluded that the District's statements characterizing Smith as a dangerous employee were false and defamatory."); *Mercer v. City of Cedar Rapids*, 104 F.Supp.2d 1130, 1172-1173 (N.D. Iowa 2000) ("the defendants are not entitled to summary judgment on the ground that Mercer cannot prove 'falsity' or that they have demonstrated the 'truth' of Chief Byne's statements beyond dispute.").

3.   Did the District Court err when it failed or refused to consider the admissible deposition testimony of the NuStar Plaintiffs' expert and the opinions rendered in his verified expert report [*App. 1140-1220, 1759-1778*; *R Doc. 118-9,*

3

*118-71*] in determining whether the NuStar Plaintiffs submitted sufficient evidence that Defendants' statements were false? *Anderson*, 477 U.S. at 257 ("[T]o survive the defendant's motion, [the plaintiff] need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial.").

4.     Did the District Court err when it entered summary judgment against the NuStar Plaintiffs on the issue of negligence, where the Defendants failed to prove the "professional standard of care" applicable to a defamation case involving private individuals? *See Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) ("Procedurally, the movant has the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

5.     Did the District Court err when it found there was no genuine issue of material fact as to Defendants' negligent publication of statements about the NuStar Plaintiffs [*App. 4983-4986*; *R Doc. 149, at 77-80*], where the summary judgment record demonstrates that Defendants (a) fabricated statements that were contradicted by the audiotapes in their possession, (b) attributed statements to sources that the sources never made, (c) failed to fact-check critical statements by Source 1, including when she took "people" to the Sibley dairy, (d) lied to

4

interviewees about Devin Nunes, (e) destroyed notes, emails, text messages and transcripts, (f) violated their own code of ethics and the professional standard of care, including the paramount duty of every journalist to tell the truth, and (g) where the District Court found there was a genuine issue of material fact as to whether Hearst and Lizza published the defamatory implication with actual malice – a higher burden than mere negligence?[2] *Jones v. Palmer Communications, Inc.*, 440 N.W.2d 884, 898 (Iowa 1989) ("The balance between the public interest in the free press and the protection of a private individual injured by defamation can be maintained by a standard of negligence which takes into account the unique role of the press. Here, we apply the professional standard of care, which is that degree of care which ordinarily prudent persons in the same profession usually exercise under similar conditions.") (cited in *Nelle v. WHO Television, LLC*, 342 F.Supp.3d 879, 897 (S.D. Iowa 2018) ("Ordinarily, issues of negligence are not susceptible of summary adjudication but should be resolved by trial in the ordinary manner,") (quotation omitted)).

---

[2]   *App. 5004-5006*; *R Doc. 149, at 98-100*; *see Mercer*, 104 F.Supp.2d at 1170 ("Evidence that Chief Byrne manufactured grounds for terminating Mercer, then published those false grounds as justifying his decision, would generate reasonable inferences that Chief Byrne not only 'made [the statements] with knowledge that [they are] false or with reckless disregard for [their] truth or falsity,' but that he made the statements with 'ill will or wrongful motive,' and specifically to 'inflict harm through falsehood.'") (quotations and citations omitted).

5

6.      Did the District Court err when it found as a matter of law that Hearst is not liable for Lizza's republications of the Article [*App. 4993*; *R Doc. 149, at 87*], where the summary judgment record demonstrates (a) there is a question of fact whether Lizza still worked at Hearst in November 2019 when he republished the Article, and/or (b) that repetition by Lizza was reasonably foreseeable[3] under the circumstances, making Hearst liable as the "original defamer"? *See, e.g., Shively v. Bozanich*, 31 Cal.4th 1230, 1243, 7 Cal.Rptr.3d 576, 80 P.3d 676 (2003) ("In general, the repetition by a new party of another person's earlier defamatory remark also gives rise to a separate cause of action for defamation against the *original defamer*, when the repetition was reasonably foreseeable … It is the foreseeable subsequent *repetition* of the remark that constitutes publication and an actionable wrong in this situation, even though it is the original author of the remark who is being held accountable.") (emphasis in original) (numerous citations omitted).

---

[3]      Under both Iowa and California law, the original defamer is liable for republication of the defamatory statement by others if it could have "reasonably foreseen the repetition." *Johnson v. J.P. Morgan Chase Bank*, 2009 WL 382734, at * 5 (E.D. Cal. 2009) (quoting *McKinney v. County of Santa Clara*, 110 Cal.App.3d 787, 795, 168 Cal.Rptr. 89 (1980)); *id. Brown v. First Nat'l Bank of Mason City*, 193 N.W.2d 547, 555 (Iowa 1972) (a person making a defamatory statement "[is], and should be, liable for damages resulting from a repetition or republication of the [defamatory] statement when such repetition or republication was reasonably foreseeable to the person making the statement."); *see App. 4992*; *R Doc. 149, at 86* ("Under Iowa law … a plaintiff need only show repetition of the original statement that was reasonably foreseeable") (citations omitted).

7. Did the District Court err when it found that the NuStar Plaintiffs "have not met their burden to show a genuine issue of material fact as to falsity of the implication" [*App. 4995-4998*; *R Doc. 149, at 89-92*], where the NuStar Plaintiffs and Devin Nunes introduced evidence that showed there was no conspiracy to hide any "politically explosive secret"? [*See, e.g., App. 4465-4466 R Doc. 131-4 (Declaration of Anthony Nunes, Jr. [AN Dec."], at 12-13, ¶¶ 24, 28)*; *App. 4439, 4446-4447*; *R Doc. 131-3 (Declaration of Devin G. Nunes ["DGN Dec."], at 11, 18-19, ¶¶ 27, 38)*]; *Newell v JDS Holdings, LLC*, 834 N.W.2d 463, 473-474 (Iowa. App. 2013) ("Whether Preston sincerely believed she overheard Newell tell a customer that working for JDS Holdings was 'scary' is a credibility call. The court is not entitled to make credibility findings on summary judgment because such determinations are reserved for the fact finder."); *see also Colborn v. Netflix, Inc.*, 2023 WL 2482620, at * 15 (E.D. Wis. 2023) ("If the media has license to accuse anyone of committing a crime unless he can categorically disprove that he has done so, then the protected interest in one'0s good name depends wholly on the altruism of journalists … If there is no basis for the allegation of criminal conduct, then, for purposes of defamation, the allegation may be considered false … A reasonable jury could hold Defendants' statement false, so they are not entitled to summary judgment on the question of falsity."); *see also Tomblin v. WCHS-TV8*, 434 Fed.Appx. 205, 210 (4th Cir. 2011) (from a

7

review of the broadcast as a whole, there was a "question of fact as to whether the broadcast produced a false 'implication, innuendo, or insinuation' about the daycare").

8.    Is the defamatory implication that the NuStar Plaintiffs conspired with two (2) sitting United States Congressman to hide a federal crime more opprobrious than the accusation that the NuStar Plaintiffs knowingly employed undocumented labor on their farm?  Is there a difference—both in fact and in social perception—between participation in a conspiracy with United States Congressman to cover-up a crime and commission of the crime?  In other words, is the defamatory implication in this case that the NuStar Plaintiffs conspired with Devin Nunes and Rep. King *materially* false? *Olson v. City of North Liberty*, 451 F.Supp.3d 1010, 1025-1026 (S.D. Iowa 2020) (at the summary judgment stage, the test of substantial truth is "'whether the plaintiff would have been exposed to any more opprobrium had the publication been free of error.'") (quoting *Behr v. Meredith Corp.*, 414 N.W.2d 339, 342-343 (Iowa 1987)); *Campbell v. Quad City Times*, 547 N.W.2d 608, 611 (Iowa App. 1996); *see Pension Advisory Group, Inc. v. Fidelity Security Life Ins. Co.*, 2020 WL 1181256, at * 7 (Tex.App-Corpus Christi-Edinburg 2020) ("substantial truth may be shown when the actual misconduct proven is of the same general type as the misconduct alleged, though less grave or of a smaller magnitude").

8

9.      Did the District Court err when it found as a matter of law that Hearst and Lizza were not negligent when they published the false implication of a conspiracy between Devin Nunes, the NuStar Plaintiffs and Rep. King, where there was no evidence of any complicity or agreement? *See Issues 5-6 supra*; *Franklin Prescriptions, Inc. v. The New York Times Co.*, 267 F.Supp.2d 425, 433 (E.D. Pa. 2003) ("Whether the procedures utilized by The Times breached the standards of news gathering and rise to a level of gross irresponsibility is a question of fact.").

10.      Did the District Court err when it found that California law applies to Devin Nunes' claim of defamation by implication [*App. 4989*; *R Doc. 149, at 83, 86, fns. 27, 29*], where the summary judgment evidence shows (a) Lizza traveled to Iowa to report the story, (b) falsely reported on events that supposedly occurred in Iowa, (c) wrote a scandalous story about a farm and farmers in Iowa, (d) and a "secret" to cover-up events that allegedly occurred in Iowa, (e) the putative sources are all from Iowa, (f) as background, the Article discusses purely local matters, including a "profile of the Nunes family dairy in Sibley" written by a local trade publication (the *Dairy Star*), the tragic death of University of Iowa student "Mollie Tibbetts", a regional trade group called the "Western Iowa Dairy Alliance", the prosecution of "Mike Millenkamp, a dairy farmer in eastern Iowa", and a priest from neighboring Worthington, Minnesota, (g) the Article was circulated in Iowa where it damaged Devin Nunes and the NuStar Plaintiffs' reputations, (h) Devin

9

Nunes was a United States Congressman who worked in Washington, D.C., was in Washington D.C. when Lizza republished the Article on November 20, 2019, and, therefore, suffered harm in multiple states,[4] (i) the journalist who wrote the Article – Lizza – is a citizen of Virginia or the District of Columbia, and (j) Hearst (the publisher) is a Delaware corporation with headquarters in New York? [*App. 4185*; *R Doc. 130, at 10, fn. 5)*]; *see Nix v. Major League Baseball*, 62 F.4th 920, 932 (5th Cir. 2023) (the alleged tort occurred in New York, where the reporter resided and AP was headquartered; the subject was a New York lawsuit; the only connection to Texas was plaintiff's allegation that he resided in Texas; "even if true, this allegation does not outweigh all the other factors favoring applying New York law"); *Kinsey v. New York Times Company*, 991 F.3d 171, 178 (2nd Cir. 2021) (despite the fact that the plaintiff lived in Maryland, and that the incident took place in his city of employment, the District of Columbia, "New York is the jurisdiction with the most significant interest in the litigation" because the defamatory statement "emanated from New York" and "New York has strong policy interests in regulating the conduct of its citizens and its media."); *Sarver v. Chartier*, 813 F.3d 891, 898-899 (9th Cir. 2016) ("The conduct causing the alleged injury—the production of *The Hurt Locker*—took place in California. Moreover,

---

[4]      [*App. 4430, 4446-4448, 4449-4451*; *R Doc. 131-3 (DGN Dec.), at 2, 18-23, ¶¶ 6, 38, 44, 48, 50) (Devin Nunes suffered injury in Washington, D.C., where he worked on the House Intelligence Committee and where he interacted with colleagues in Congress)*].

all of the corporate defendants other than Playboy Enterprises are incorporated and alleged to be conducting business in California. And, although Boal is a citizen of New York and Playboy Enterprises is a citizen of Illinois and Delaware, Sarver alleges that both conduct business in California … The multistate nature of Sarver's alleged harms is central to the choice-of-law analysis. Because the film was distributed nationwide and Sarver's alleged injuries would most likely have occurred in multiple states, 'the place of injury will *not* play an important role in the selection of the state of applicable law.'") (quotation and citation omitted); *Davis v. Costa-Gavras*, 580 F.Supp. 1082, 1093 (S.D.N.Y. 1984) ("In a multistate libel case such as this, where the plaintiffs are public servants from different jurisdictions and the alleged damage to their reputations is diffused over fifty states and several foreign nations, the state where defendants' significant acts and omissions gave rise to their liability is the most appropriate source of legal norms, particularly when it is also the forum state.").

11. Even if California law applies to Devin Nunes' claim of defamation by implication – which it does not – did the District Court err in applying California law? Did Lizza republish the Article on November 20, 2019 – more than a year after the original publication – when he tweeted it to a new target

Appellate Case: 23-2322      Page: 23      Date Filed: 08/11/2023 Entry ID: 5304985

audience,[5] made specific mention of Devin Nunes and the fact that he was "in the news", promoted the Article and solicited review of it (telling his followers that "I've got a story for you"), repeated the defamatory headline, added to the original substance, and followed-up the next day by repeating the "core finding" of the Article (that the NuStar Plaintiff's "used undocumented immigrants"), tagging @DevinNunes and @ICEgov? [*App. 4574-4575*; *R Doc. 132-2, at 9-10*]; *Nunes v. Lizza*, 12 F.4th 890, 900-901 (8th Cir. 2021); *Yeager v. Bowlin*, 693 F.3d 1076, 1082 (9th Cir. 2012) ("One 'general rule' is that a statement is republished when it is 'repeated or recirculated to a new audience.'") (citation and quotation omitted); *Unsworth v. Musk*, 2019 WL 8220721, at * 11 (C.D. Cal. 2019) ("Defendant is only liable for the Buzzfeed Article, however, if republication of Defendant's statements from the Email was reasonably foreseeable. Defendant claims he could not reasonably foresee republication of his statements because of his previous experience with reporters and the fact that he wrote 'off the record' at the beginning of the Email … A genuine issue of material fact persists as to the reasonable foreseeability of the republication of the contents of the Email.

---

[5] Lizza tweeted the Article to a new target audience – his Twitter followers on November 20, 2019. Because Lizza made a "conscious and deliberate" decision to renew and expand his use of the defamatory material, his tweet is a republication. *See Christoff v. Nestle USA, Inc.*, 47 Cal.4th 468, 485, 97 Cal.Rptr.3d 798, 213 P.3d 132 (2009) (Werdeger, J., concurring) (cited in *Alberghetti v. Corbis Corp.*, 713 F.Supp.2d 971, 979 (C.D. Cal. 2010) ("whenever a defendant makes a 'conscious, deliberate choice to continue, renew or expand [its] use' of [e.g., defamatory] material, the statute of limitations starts anew.").

12

Summary judgment is therefore inappropriate, and the question must be presented to the jury.") (citation omitted); *compare Larue v. Brown*, 235 Ariz. 440, 333 P.3d 767 (2014) (finding that the allegedly defamatory material was republished on a website when the website owner responded to reader's comments by providing additional information in response to a reader's questions and re-urging the truth of the original articles, thus adding to the substance of the original material).

12.    Did the District Court err when it found there was "no genuine issue of material fact as to intent to convey the defamatory impression" [*App. 5004*; *R Doc. 149, at 98*], where the Article itself (including the use of multiple Getty Images of armed ICE agents), the November 20-21, 2019 republications, and Devin Nunes' Declaration clearly contain evidence that show Defendants' subjective intent to convey the defamatory implication of a conspiracy? [*App. 4248-4250*; *R Doc. 130-1 (Plaintiffs' Local Rule 56 Response to Defendants' Statement of 'Undisputed' Facts ["Plaintiffs' Disputed Facts Statement"], at 38-39, ¶¶ 78, 80, 81)*; *App. 4441-4442*; *R Doc. 131-3 (DGN Dec.), at 13-14, ¶ 31)*]; *Nunes*, 12 F.4th at 899 ("Nunes has plausibly alleged that Lizza and Hearst intended or endorsed the implication that Nunes conspired to cover up the farm's use of undocumented labor.  The complaint points to the article's 'click-bait headline' that Nunes is hiding a 'politically explosive secret,' it's discussion of his efforts to conceal the farm's move to Iowa, and its claim that the farm employs

13

undocumented labor.  The manner in which the article presents the discussion of the farm's use of undocumented labor permits a plausible inference that Lizza and Hearst intended or endorsed the implication."); *Sandoval v. Does 1-3*, 571 F.Supp.3d 473, 490 (E.D.N.C. 2021) ("the tone of Cartman's statement along with the use of the term 'slimy insider' establishes that Cartman intended to imply Sandoval's involvement in illegal activity."); *Ballengee v. CBS Broadcasting, Inc.*, 331 F.Supp.3d 533, 548-549 (S.D. W.Va. 2018) (a "series of statements [in the broadcast] creates a genuine dispute of material fact as to whether the broadcast could be reasonably understood to impart that Tug Valley was sued by the State of West Virginia, and whether the broadcast affirmatively suggests that CBS intended or endorsed the inference."); *Moore v. Sun Pub. Corp.*, 118 N.M. 375, 381, 881 P.2d 735 (1994) (the statements at issue went "beyond the essential facts" and suggested that the author of the notice "may have intended some negative inference").

13.    Did the District Court err when it found there was "no genuine issue of material fact as to injury" [*App. 5000-5001*; *R Doc. 149, at 94-95*], where Devin Nunes introduced evidence of special damages, injury to reputation ***and*** actual damages? [*App. 4193-4200*; *R Doc. 130, at 20-25*]; *Burger v. McGilley Memorial Chapels, Inc.*, 856 F.2d 1046, 1050 (8th Cir. 1988) (punitive damage award supported by the fact that defendants "concocted" the story); *Cockram*, 680 F.3d at

14

Appellate Case: 23-2322     Page: 26     Date Filed: 08/11/2023 Entry ID: 5304985

1054 (the evidence was sufficient to allow a reasonable jury to find actual reputational harm flowing from the defendant's statements: after defendant published the statements, people posted negative comments on social media. Plaintiff received threats and accusations of racism. Family friends and acquaintances contacted plaintiff's father and questioned him about plaintiff); *Kelly v. Iowa State Educ. Ass'n*, 372 N.W.2d 288, 300-302 (Iowa App. 1985) ("Kelly did present evidence that he had a good reputation as an administrator before defendant's writings were published. He presented evidence that the writings would adversely affect his reputation. He also submitted evidence of the extent of the publication. In addition, he presented evidence of special damages: emotional distress and lost speaking fees").

14. Did the District Court err when it granted Defendants' motion to preclude Devin Nunes and the NuStar Plaintiffs from calling certain witnesses at trial or submitting affidavits from those witnesses in resistance to the pending motion for summary judgment [*App. 4893-4906*; *R Doc. 128*], where (a) Devin Nunes complied with Rules 26(a)(1)(i) and 26(e) and disclosed the witnesses twenty-eight (28) days ***before*** the discovery cut-off, (b) the disclosed witnesses corroborated the injuries to Devin's reputation, and, thus, they were important, (c) the witnesses were identified within a reasonable time after Defendants identified a damages expert, (d) Hearst and Lizza never sought an extension of the discovery

15

deadline, and proceeded to depose Devin Nunes and examine him at length concerning the disclosed witnesses, (e) despite ample opportunity and manpower (ten lawyers), Hearst and Lizza refused to contact ***any*** of the witnesses, (f) trial was almost eight (8) months away at the time of the disclosures of the witnesses, affording sufficient time to extend the discovery schedule briefly so as to facilitate any depositions Defendants cared to take, and (g) the District Court failed to consider a less drastic alternative to witness preclusion, such as allowing Devin Nunes and the NuStar Plaintiffs to select five (5) of the disclosed witnesses to testify? *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) ("the exclusion of evidence is a harsh penalty [for non-compliance with discovery disclosure deadlines] and should be used sparingly."); *Petersen v. Pan Am. Railways, Inc.*, 2015 WL 2451227, at * 4 (N.D.N.Y. 2015) ("With regard to the timeliness of Defendants' supplementation, the Court finds that the fact that the supplementation occurred after the close of discovery is harmless. Defendants served their supplemental disclosure only ten days after the discovery deadline had expired … this is not a case 'where the disclosing party waited until the eve of trial to disclose its witnesses'"); *Spencer v. Peters*, 2012 WL 6608616, at * 2 (W.D. Wash. 2012) ("the Court also acknowledges that some of Spencer's belatedly identified witnesses may be important to his case. Given that, it would not unduly prejudice Defendants to allow Spencer to select two of the nine witnesses, to whom

16

Defendants have objected, to testify … Because the discovery cutoff date is December 17, 2012, the Court will extend the discovery completion deadline to January 8, 2013.").

## STATEMENT OF THE CASE

Devin Nunes commenced this action on September 30, 2019. He filed an amended complaint on February 3, 2020. [*App. 35-88*; *R Doc. 1*]. He claimed express defamation based on eleven alleged false statements in the Article, and defamation by implication. The alleged defamatory implication "is that the article implies falsely that Representative Nunes 'conspired or colluded with his family and with others to hide or cover-up' that the farm 'employs undocumented labor.'" *Nunes*, 12 F.4th at 895. The NuStar Plaintiffs commenced their action against Hearst and Lizza on January 16, 2020. [*App. 5015-5030*; *R Doc. 1 (Case 4003)*]. In an amended complaint filed on May 24, 2020, they claimed express defamation based on fourteen alleged false statements in the Article, and defamation by implication. The NuStar Plaintiffs alleged that "[t]he strong defamatory gist and false implication from the Article is that Plaintiffs conspired with others (including Devin Nunes and Steve King) to hide and conceal a 'politically explosive secret' – that NuStar knowingly employs undocumented labor on its dairy farm." [Case 5:20-cv-04003-CJW-MAR, R. Doc. 28 (Am. Compl.), at 14-21, ¶¶ 22 and 23)].

Hearst and Lizza filed motions to dismiss both Devin Nunes and the NuStar Plaintiffs' cases. By Memorandum Opinion and Order entered on August 5, 2020 [*App. 14*; *R Doc. 53*], the District Court granted Hearst and Lizza's motion and dismissed Devin Nunes's claims with prejudice. By Memorandum Opinion and Order entered on September 11, 2020, the District Court granted in part and denied in part Hearst and Lizza's motion to dismiss the NuStar Plaintiffs' claims. The Court ruled that the NuStar Plaintiffs "stated a claim of [express] defamation by asserting that defendants made false statements that plaintiffs knowingly employed undocumented or unauthorized workers." [*App. 5031-5072*; *R Doc. 50 (Case 4003), at 24-26*]. The District Court dismissed all other claims asserted by the NuStar Plaintiffs, including the NuStar Plaintiffs' claim of defamation by implication. The Court ruled that "no reasonable person could draw plaintiffs' asserted implication from the Article. And … even if a reasonable person could draw the implication, there is no indication that defendants intended or endorsed the implication." [*App. 5031-5072*; *R Doc. 50 (Case 4003), at 1-23, 26-40*].

## The First Appeal

Devin Nunes timely appealed the dismissal of his case. [*App. 14*; *R Doc. 55*].

On September 15, 2021, this Court, applying Iowa law,[6] found that Devin Nunes had stated a claim of defamation by implication. In ruling that the Article was defamatory by implication, the Court highlighted specific language in the Article that demonstrated the defamatory implication. *Nunes*, 12 F.4th at 896-897. Hearst and Lizza do not dispute the defamatory implication in their summary judgment motion, or that there is sufficient evidence in the record to demonstrate that based on the Article's presentation of facts, "a reasonable reader could draw the implication that Representative Nunes conspired to hide the farm's use of undocumented labor". *Id.* at 897.

The Court of Appeals reversed the judgment of the District Court in part, and remanded the case for further proceedings on Devin Nunes's claim alleging defamation by implication. *Id.* at 901. Hearst and Lizza filed a petition for rehearing and rehearing *en banc*, which this Court denied.

## Proceedings on Remand

Upon remand, both Devin Nunes and the NuStar Plaintiffs sought leave to amend, which was granted. Devin Nunes filed a third amended complaint, asserting a claim of defamation by implication. [*App. 144-166*; *R Doc. 103*]. The

---

[6] The *Nunes* Court applied Iowa substantive law "because the district court determined that there was no conflict between Iowa and California defamation law, and the parties do not challenge that conclusion on appeal." *Nunes*, 12 F.4th at 895.

NuStar Plaintiffs filed a third amended complaint, asserting claims of express defamation and defamation by implication. [*App. 182-213*; *R Doc. 188 (Case 4003)*]. After Hearst and Lizza filed answers and defenses to both complaints [*App. 167-181, 214-228*; *R Doc. 107*; *R Doc. 193 (Case 4003)*], the parties proceeded with discovery.

On October 7, 2022, Hearst and Lizza filed a motion pursuant to Rule 26(a)(1) and 37(c)(1) to preclude Devin Nunes and the NuStar Plaintiffs from relying on or introducing into evidence testimony or documents from certain current and former Republican politicians, officials, and staff of Devin Nunes that Plaintiffs disclosed prior to the close of discovery. In the alternative, Hearst and Lizza sought leave to depose the disclosed witnesses. [*App. 229-379*; *R Doc. 113-113-11*]. Devin Nunes and the NuStar Plaintiffs opposed Defendants' motion to preclude and timely filed a resistance. [*App. 22*; *R Doc. 116*].

On October 25, 2023, Defendants filed a resisted motion for summary judgment, together with a Local Rule 56 statement of "undisputed" facts and 194 supporting exhibits, including depositions, documents, electronically stored information, affidavits or declarations, interrogatory answers, and other materials. [*App. 380-4175*; *R Doc. 118-118-94*]. Devin Nunes and the NuStar Plaintiffs filed a timely opposition to Defendants' motion pursuant to Rule 56(c), by asserting that the facts are genuinely disputed, and by citing to particular parts of materials in the

20

record, including deposition testimony, declarations of Devin Nunes and Anthony Nunes, Jr., interrogatory answers, documents and other materials. [*App. 4176-4618*; *R Doc. 130-132-12, 135*].  Hearst and Lizza filed a 236-page reply to Devin Nunes and the NuStar Plaintiffs' response and statements of disputed facts. [*App. 4619-4853*; *R Doc. 138-1*].

On November 18, 2022, the District Court granted Defendants' motion to preclude, and precluded Devin Nunes and the NuStar Plaintiffs from calling any of their disclosed witnesses at trial or submitting affidavits from those witnesses in resistance to the pending motion for summary judgment. [*App. 4893-4906 R Doc. 128*].

On January 5, 2023, the parties appeared for argument on Defendants' motion for summary judgment.

On April 25, 2023, the District Court published a Memorandum Opinion and Order pursuant to which it granted Defendants' motion for summary judgment, dismissed Devin Nunes and the NuStar Plaintiffs' claims with prejudice.  The Court entered final Judgment on May 3, 2023. [*App. 4907-5009*; *R Doc. 149, 151*].

Plaintiffs-Appellants timely appealed. [*App. 5010-5014*; *R Doc. 153*].

### Facts Relevant To The Issues Submitted For Review

On September 30, 2018, Devin Nunes and the NuStar Plaintiffs suffered egregious harm to name and reputation because of false and defamatory statements

21

and implications published by Hearst and Lizza with actual malice in an online Article with the click-bait headline, "**Devin Nunes's Family Farm is Hiding a Politically Explosive Secret**".  Hearst also published the Article in print under the equally denigrating title, "**Milking the System**".  Text under the title of the print version asks, "So why did [Devin Nunes's] parents and brother cover their tracks after quietly moving the farm to Iowa?  Are they hiding something politically explosive?" [*App. 4478-4499*; *R Doc. 131-7, 131-8*].

In their ***DISPUTED*** Facts Statement [*App. 4211-4369*; *R Doc. 130-1*], Devin Nunes and the NuStar Plaintiffs carefully lay out evidence, including expert testimony, that demonstrates (1) NuStar did not knowingly employ undocumented labor, and, thus, it is materially false to state, as Defendants did, that the NuStar Plaintiffs knowingly employed undocumented laborers, (2) Devin Nunes and the NuStar Plaintiffs did not conspire together or with Rep. King to hide or cover up the use of undocumented labor at the NuStar dairy in Sibley, Iowa, and, thus, it is materially false to imply, as Defendants' did, that such a conspiracy existed, (3) Defendants violated the professional standard of care and their own code of conduct when they fabricated false statements and implications about Devin Nunes and the NuStar Plaintiffs, knowing that the statements in the Article were actually contradicted by audiotape interviews with sources, and falsely attributed statements to sources that the sources never made, (4) Lizza republished the false

and defamatory statements in November 2019, knowing that Devin Nunes and the NuStar Plaintiffs contended that the statements and implications were false and defamatory, and (5) Devin Nunes and the NuStar Plaintiffs suffered injury as a result of the Defendants' publications and republications of the false and defamatory statements and implications.

In its Memorandum Opinion and Order on summary judgment, the District Court **correctly** ruled (a) the NuStar Plaintiffs are private individuals and that is the law of the case, (b) Defendants do not dispute that they published the false statements and implications, (c) Defendants do not dispute that the statements and implications are defamatory as to Devin Nunes and the NuStar Plaintiffs, (d) Defendants do not dispute that the statements and implications are of or concerning Devin and the NuStar Plaintiffs, (e) there is a genuine issue of material fact as to whether the NuStar Plaintiffs were injured by the alleged defamatory statements in the Article, (f) Defendants do not dispute that the article juxtaposes a series of facts so as to produce the defamatory implication as to Devin Nunes and the NuStar Plaintiffs, (g) Defendants do not dispute that Lizza republished the Article in November 2019 via the Tweet under Iowa law, (h) a genuine issue of material fact exists as to the falsity of the implication as to Devin Nunes, and (i) there is a genuine issue of material fact as to whether Defendants by clear and convincing evidence published the false defamatory statements and implications with actual

23

malice. [*App. 4967-4970, 4976-4979, 4993-4995, 4999, 5002-5006*; *R Doc. 149, at 61-64, 70-73, 87-89, 93, 96-100*].

## SUMMARY OF THE ARGUMENT

The District Court erred when it granted Hearst and Lizza's motion to preclude disclosed witnesses and motion for summary judgment. The District Court's decisions should be reversed and this action remanded for trial on the merits of all disputed facts for the following reasons:

1.      The vast summary judgment record in this case discloses numerous genuine issues of material fact such that Hearst and Lizza are not entitled to judgment as a matter of law. In this case, the District Court failed to view all facts in the light most favorable to Devin Nunes and the NuStar Plaintiffs and give these non-moving parties the benefit of all reasonable inferences that can be drawn from the facts. The District Court made credibility determinations, weighed the evidence, drew inferences from the facts, and otherwise performed jury functions, which exceeded the scope of permissible review on summary judgment.

2.      There is a genuine issue of material fact as to whether the defamatory statements about the NuStar Plaintiffs are false, considering the NuStar Plaintiffs' protocols and substantial good faith employment verification efforts, the testimony of immigration attorney Amanda Bahena, and the testimony of the NuStar Plaintiffs' expert witness, Clete Samson.

Appellate Case: 23-2322      Page: 36      Date Filed: 08/11/2023 Entry ID: 5304985

3.　　In determining whether Defendants' statements about the NuStar Plaintiffs were false – *i.e.*, whether NuStar Farms knowingly employed undocumented labor – the District Court erred when it failed or refused to consider the admissible deposition testimony of the NuStar Plaintiffs' expert and the opinions rendered in his verified expert report.　The testimony of the NuStar Plaintiffs' expert alone is sufficient to demonstrate a genuine issue of material fact on the question of falsity.

4.　　Defendants failed to satisfy their summary judgment burden to show no genuine issue of material fact on the question of negligence.

5.　　Regardless whether Defendants met their summary judgment burden, there is a genuine issue of material fact as to Defendants' negligent publication of statements about the NuStar Plaintiffs.　Indeed, the NuStar Plaintiffs and Devin Nunes meet the higher burden to show by clear and convincing evidence that there was a genuine issue of material fact as to whether Hearst and Lizza published the defamatory implication with actual malice.

6.　　The District Court erred when it found as a matter of law that Hearst is not liable for Lizza's republications of the Article.　There is a question whether Lizza still worked at Hearst in November 2019 when he republished the Article, and repetition by Lizza was reasonably foreseeable under the circumstances, making Hearst liable as an original defamer.

7. There is a genuine issue of material fact concerning the falsity of the implication that the NuStar Plaintiffs conspired with Devin Nunes and Rep. King to hide the "politically explosive secret".

8. The defamatory implication that the NuStar Plaintiffs conspired with two (2) sitting United States Congressman to hide a federal crime is more opprobrious than the mere accusation that the NuStar Plaintiffs knowingly employed undocumented labor on their farm. The defamatory implication in this case that the NuStar Plaintiffs conspired with Devin and Rep. King is *materially* false. It was error to hold otherwise.

9. The District Court erred when it found as a matter of law that Defendants were not negligent when they published the false implication of a conspiracy between Devin Nunes, the NuStar Plaintiffs and Rep. King.

10. The District Court erred when it found that California law applies to Devin Nunes' claim of defamation by implication. There is no true conflict between Iowa and California law concerning republication, and, in any case, California is not the state with the most significant relationship to the occurrence and the parties. Iowa is clearly the state with the most significant interest in the litigants and the outcome of the litigation.

11. Even under California law, Lizza republished the Article on November 20, 2019.

12.     There is a genuine issue of material fact as to whether Hearst and Lizza intended to convey the defamatory implication of a conspiracy so as to preclude summary judgment.

13.     Devin Nunes sustained injury.   As in *Cockram*, he introduces in evidence vicious social media posts and threatening messages published in response to the Article.   Further, Devin Nunes's uncle Gerald testified that he no longer wants to be around Devin Nunes because of the reputational risk created by the Article.   Additionally, Devin Nunes shows the impact of the Article on his standing among colleagues in Congress and the risk it created for him as Chairman of the House Intelligence Committee. [*App. 4442-4447*; *R Doc. 131-3 (DGN Dec.), at 14-19, ¶¶ 32, 33, 34, 35, 36, 37, 38 and 39*].[7]

14.     The District Court abused its discretion when it granted Defendants' motion to preclude Devin and the NuStar Plaintiffs from calling certain witnesses at trial or submitting affidavits from those witnesses in resistance to the pending

---

[7]     Devin Nunes testified that "[t]he reaction of my colleagues in Congress to the *Esquire* Article was devastating and painful.   Colleagues questioned whether I had failed to disclose an interest in NuStar and whether I conspired to hide the use of undocumented workers at the Iowa dairy.   They began discussing my fitness to continue serving on the House Intelligence Committee and whether I would likely face an ethics investigation.   Some of my strong supporters in Congress no longer defended me publicly". [*App. 4446*; *R Doc. 131-3 (DGN Dec.), at 18-19, ¶ 38*].

Appellate Case: 23-2322     Page: 39     Date Filed: 08/11/2023 Entry ID: 5304985

motion for summary judgment.[8]  Under the circumstances. witness preclusion was draconian, manifestly unfair and highly prejudicial.

## **STANDARD OF REVIEW**

The Court of Appeals reviews a district court's grant of summary judgment *de novo*.

"[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 209 (8th Cir. 1976) (citing *Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 f. 5 (6th Cir. 1975)).  The purpose of summary judgment is not "to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962) (quotation omitted).  "Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact." *Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir. 1987).  Rather, it is designed to avoid "useless,

---

[8]    At the time the District Court entered its witness preclusion Order, Devin and the NuStar Plaintiffs had obtained sworn declarations from the following disclosed witnesses: (1) John Ratcliffe, former Director of National Intelligence; (2) Ohio Congressman Brad Wenstrup; (3) former South Carolina Congressman Trey Gowdy; (4) former North Carolina Congressman George E.B. Holding; and (5) Matt Butler.  Each of these witnesses would have provided evidence that publication and republication of the Article damaged Devin Nunes' reputation. [*App. 4179*; *R Doc. 130 at 4 fn. 2*].

Appellate Case: 23-2322     Page: 40     Date Filed: 08/11/2023 Entry ID: 5304985

expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried." *Anderson v. Viking Pump Div., Houdaille Indus., Inc.*, 545 F.2d 1127, 1129 (8th Cir. 1976) (citation omitted).

"A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Doe v. Hagar*, 765 F.3d 855, 860 (8th Cir. 2014) (quotation and citation omitted). The court is required to view disputed facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Morris v. Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008). The focus is solely on whether there are genuine issues of material fact for trial.

## ARGUMENT

The District Court short-circuited this litigation, depriving Devin Nunes and the NuStar Plaintiffs of a trial on the merits of their claims of defamation and defamation by implication. For the reasons stated below, the Court of Appeals should reverse and remand.

### A. *THERE ARE GENUINE ISSUES OF MATERIAL FACT*

To establish a *prima facie* case of express defamation under Iowa law, "the plaintiff must show the defendant (1) published a statement that (2) was

defamatory (3) of and concerning the plaintiff, and (4) resulted in injury to the plaintiff." *Nunes*, 12 F.4th at 895. A claim asserting defamation by implication requires proof of similar elements, except that a plaintiff need not show that the individual statements are defamatory. Instead, defamation by implication arises from what is implied when a defendant "(1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts." *Id.* at 895-896 (quoting *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007) (quoting Dan B. Dobbs et al., *Prosser & Keeton on the Law of Torts* § 116, at 117 (5th ed. Supp. 1988)). The implication constitutes defamation "even though the particular facts are correct," unless it qualifies as an "opinion."[9] *Nunes*, 12 F.4th at 896 (quoting *Prosser & Keeton on the Law of Torts* § 116, at 117). Because Devin Nunes is a public

---

[9] In *Nunes*, the Court found that the defamatory implication does not qualify as opinion. 12 F.4th at 897-898 ("Nunes alleges that the article implies the existence of a 'politically explosive secret' that he 'conspired with others' to hide the farm's use of undocumented labor. A conspiracy is an agreement that requires knowledge—here, knowledge that the farm employed undocumented labor and a knowing agreement to cover up that politically embarrassing fact. Yet the Congressman's complaint says that he was 'not involved' in the farm's 'operations,' had 'no knowledge of who the dairy farm hired,' and thus 'was not involved in any conspiracy or cover-up.' Whether Nunes knew about the farm's hiring practices, including the potential use of undocumented labor, and whether he agreed with others to keep that information secret, are issues of verifiable fact. We thus conclude that the implication is 'sufficiently factual to be susceptible of being proved true or false,' so it is not a protected opinion."). This ruling is the law of the case. Hearst and Lizza do not argue on summary judgment that the defamatory implication is opinion.

Appellate Case: 23-2322     Page: 42     Date Filed: 08/11/2023 Entry ID: 5304985

figure, the Supreme Court's jurisprudence on the First Amendment also requires him to prove by clear and convincing evidence that the defamatory implication is false and was made with actual malice. *Id.* at 895 (citing *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 659 (1989); *New York Times v. Sullivan*, 376 U.S. 254, 279-280 (1964)).

In their motion [*App. 380-386*; *R Doc. 118*], Hearst and Lizza assert that they are entitled to summary judgment for several reasons: (1) the NuStar Plaintiffs "cannot meet their burden to prove Defendants published any false statements about them", (2) the defamatory implication of the Article, that the NuStar Plaintiffs "conspired" with two United States Congressman to cover up or hide NuStar's use of undocumented labor, is "substantially true as a matter of fact and law" as to the NuStar Plaintiffs because it "alleges no defamatory gist or sting beyond what is alleged in the NuStar Plaintiffs' Count I concerning their claimed knowing use of undocumented labor", (3) the NuStar Plaintiffs "cannot meet their burden to prove Defendants published any false statements with the requisite level of fault" under Iowa law, *i.e., negligence*,[10] (4) Devin Nunes "cannot show an actionable publication by Defendants … under California law which governs his

---

[10] Hearst and Lizza also argued that the NuStar Plaintiffs "produced no evidence of damages, an essential element of their claims, requiring dismissal for this additional reason." [*App. 382*; *R Doc. at 3, ¶ 7*]. The District Court correctly found that there is a genuine issue of material fact as to whether the NuStar Plaintiffs were injured. [*App. 4977-4979*; *R Doc. 149 at 71-73*].

Appellate Case: 23-2322     Page: 43     Date Filed: 08/11/2023 Entry ID: 5304985

claim", (5) Hearst played no role in Lizza's republication of the Article and "is not a proper Defendant" for Devin Nunes' and the NuStar Plaintiffs' claims of defamation by implication, (6) Devin Nunes "cannot meet his burden to prove … that Lizza intended to convey the alleged implication", and (7) Devin Nunes "cannot prove any damages caused by Defendants' publication".[11]

Because there is evidence in the summary judgment record to support each element of the NuStar Plaintiffs' claims of defamation *and* defamation by implication *and* Devin Nunes' claim of defamation by implication, the District Court erred and its ruling must be reversed.[12]

---

[11] Hearst and Lizza also argued that Devin Nunes could not prove the falsity of the defamatory implication and that Devin Nunes, a public figure, could not meet his burden to prove actual malice. [*App. 383-384*; *R Doc. 118 at 4-5, ¶¶ 12-13*]. The District Court correctly found "a genuine issue of material fact exists on the issue of falsity [of the implication] as to Nunes" and correctly found "by clear and convincing evidence that there is a question as to whether actual malice existed". [*App. 5002-5006*; *R Doc. 149 at 96-100*].

[12] The District Court paid lip service to the fact that Devin Nunes and the NuStar Plaintiffs disputed the material facts. The Court noted the disputes without explaining the bases for Devin and the NuStar Plaintiffs' positions in the record. [*See, e.g., App 4911*; *R Doc. 149 at 5 ("The following facts are undisputed unless otherwise noted.")*; *App 4920, 4922, 4923, 4924, 4925, 4926, 4927, 4929, 4931, 4932, 4933, 4934, 4936, 4937, 4939, 4942, 4943, 4945, 4953, 4954, 4955, 4956, 4958 and 4961*; *R Doc. 149 at 14, 16-21, 23, 25-28, 30-31, 33, 36-37, 39, 47-49, 52 and 55 (noting that "plaintiffs disagree", "plaintiffs qualify", "plaintiffs dispute", "plaintiffs deny" and "plaintiffs contest" certain material facts, that "plaintiffs deny these facts", that "defendants protest[ed]" certain contentions by plaintiffs, that "plaintiffs maintain that Lizza's belief is baseless", and that plaintiffs claim certain events never happened)*].

## 1. *Falsity*

Iowa courts examine the "gist" or "sting" of a publication to determine whether it is materially false or "substantially untrue". *Campbell*, 547 N.W.2d at 610 (citing *Behr*, 414 N.W.2d at 342)).[13] If the underlying facts are disputed, as they are here, the issue of falsity is a matter for the jury. *Olson*, 2020 WL 1540227 at * 7 (summary judgment denied – "'the underlying facts as to the gist or sting of the defamatory charge' remain disputed and the question is not one for the Court."); *Wright v. Keokuk County Health Center*, 399 F.Supp.2d 938, 957 (S.D. Iowa 2005) ("When facts underlying the gist of the allegedly defamatory statement are disputed, it is not proper for the Court to determine truth as a matter of law.").

The summary judgment record in this case contains ample evidence from which a jury could conclude that the Article contains material falsehoods. In their 159-page Local Rule 56 response to Hearst and Lizza's statement of "undisputed" facts [*App. 4211-4369*; *R Doc. 130-1*], Devin Nunes and the NuStar Plaintiffs expressly denied and disputed the material facts. Their detailed summary judgment evidence demonstrates that the Article contains a legion of material

---

[13] In Iowa, substantial truth is recognized as a defense in a defamation action. *Campbell*, 547 N.W.2d at 610 (citing *Hovey v. Iowa State Daily Publication Bd., Inc.*, 372 N.W.2d 253, 256 (Iowa 1985)). Libel defendants are not required to establish the literal truth of every detail of the publication, as long as the "sting" or "gist" of the defamatory charge is substantially true. *Hovey*, 372 N.W.2d at 255.

33

falsehoods, beginning with the headline and including the false statement that NuStar knowingly relied on undocumented labor and the false implication that the NuStar Plaintiffs conspired with two United States Congressman to hide that false fact.

- Contrary to the Article, "**Devin Nunes's family farm**" – the farm of "political lore", the farm that was "central to [Devin Nunes's] identity and a feature of every major political profile written about him" – **never moved**. The farm has always been in Tulare, California. Right out of the gate, Hearst and Lizza misrepresented to readers that "Devin Nunes's family farm" moved to Iowa.

  [*App. 4232-4233, 4268*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 22-23, 58, ¶¶ 54, 105)*; *App. 4435*; *R Doc. 131-3 (DGN Dec.), at 7, ¶ 17*].

- Contrary to the Article, **there was never a secret**. No one ever tried to hide the fact that Anthony Jr., Dian Nunes, Anthony III and Lori Nunes moved to Iowa in 2006. No one did anything to "cover their tracks" or "conceal" anything for any reason. Hearst and Lizza misrepresented to readers that there was a "secret" and an effort to hide that secret.

  [*App. 4232-4233, 4235-4237, 4249, 4256-4257, 4266*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 22-23, 25-27, 39, 46-47, ¶¶ 54, 58, 80, 89, 101)*; *App. 4455-4556*; *R Doc. 131-4 (AN Dec.), at 2-3, ¶ 5)*; *App. 4435-4437*; *R Doc. 131-3 (DGN Dec.), at 7-9, ¶¶ 18-21*].

- Contrary to the Article's implication, **Devin Nunes never knew about NuStar Farm's hiring practices, including the potential use of undocumented labor**. He never had any interest in NuStar, never had any involvement in management, employment or hiring decisions, and never spoke with his father, mother, brother or NuStar about its employees, or any employment, immigration or dairy pool issues.

*[App. 4220-4222, 4257-4258, 4263-4264, 4323-4324, 4327-4329; R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 10-12, 47-48, 53-54, 113-114, 117-119, ¶¶ 23, 25, 90, 98, 245, 248, 261, 262, 266, 267); App. 4437; R Doc. 131-3 (DGN Dec.), at 9, ¶ 22); App. 4457; R Doc. 131-4 (AN Dec.), at 4, ¶ 10].*

- The Article misrepresents that in 2007, Devin Nunes and his wife, Elizabeth, used NuStar dairy's Iowa post-office-box address on a filing with the Securities and Exchange Commission. This is a complete falsehood.

  *[App. 4249, 4257-4258, 4328; R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 39, 47-48, 118, ¶¶ 79, 90, 263); App. 4438; R Doc. 131-3 (DGN Dec.), at 10, ¶ 23); App. 4493; R Doc. 131-7 at 16, Lizza 530].*

- The headline of the Article is a complete fabrication. **NuStar is not and never has been** "***Devin Nunes's Family Farm***".

  *[App. 4222; R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 12, ¶ 29 fn. 3]*

- Contrary to the Article, **Sources 1 and 2 did not have "firsthand knowledge" that NuStar relied on undocumented labor**. Hearst and Lizza knew these statements were false and the audiotapes demonstrate that Hearst and Lizza were lying.

  *[App. 4238-4242, 4244, 4255; R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 28-32, 34, 45, ¶¶ 61, 67, 87].*

- **Sources 1 and 2 did not make the statements attributed to them** in the Article.

  *[App. 4238-4242, 4244; R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 28-32, 34, ¶¶ 61, 67].*

- Contrary to the Article, **Source 2 was fully documented**.

  *[App. 4246; R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 36, ¶ 72)].*

35

On the issue whether NuStar knowingly hired undocumented workers, the NuStar Plaintiffs presented substantial evidence, including expert testimony, that they did not. The NuStar Plaintiffs operate a dairy farm in Sibley, Iowa. They have been in operation since 2007. In the eleven-plus years between 2007 and publication of the Article on September 30, 2018, NuStar never received any complaints or notices about their immigration/employment hiring and verification practices.[14] The summary judgment record shows that in making hiring decisions, NuStar in good faith followed an established protocol. As part of that protocol, NuStar filled out a form 1-9 and obtained employment verification documents at the time each employee started working and certainly before any paycheck was released. NuStar duly inspected employment verification documents presented prior to employment. The documents appeared on their face to be genuine and related to the person presenting them. Mindful that it could not discriminate against workers, NuStar accepted and made copies of the documents. NuStar retained copies of the verification records for each employee long after they were required to by law, showing their diligence and good faith. [*App. 4458, 4465*; *R Doc. 131-4 (AN Dec.), at 5, 12, ¶¶ 12, 26*].

---

[14] It was not until after Devin Nunes filed suit against Hearst and Lizza in September 2019 that NuStar received "no-match letters" from the Social Security Administration. [*App. 1082-1097*; *R Doc. 118-54 and 118-55*].

Appellate Case: 23-2322     Page: 48     Date Filed: 08/11/2023 Entry ID: 5304985

Clete P. Samson, Esquire, is an expert and specialist in immigration law and worksite compliance. Before joining the law firm Kutak Rock in 2016, he served the United States for seven years as a federal trial attorney for the U.S. Department of Homeland Security. There, he gained extensive trial experience prosecuting hundreds, if not thousands, of removal cases with underlying criminal and immigration elements. He has extensive knowledge of the Immigration and Nationality Act and the Immigration Reform and Control Act of 1986, including the civil and criminal penalties for hiring and employing individuals without employment authorization, worksite enforcement, and other related issues. During this time, Mr. Samson served as the ICE national POC for ICE field attorneys regarding the worksite enforcement program which was effectively relaunched by ICE in 2008. He organized and conducted quarterly worksite enforcement meetings and also prepared, analyzed, and issued a bi-annual summary of case law relevant to worksite enforcement actions. Clete Samson is the NuStar Plaintiff's immigration expert. Based upon his review and analysis of the documentation provided by NuStar in discovery, including the I-9s and supporting identity, employment and tax verification documents and deposition testimony, Mr. Samson testified that the NuStar Plaintiffs performed an adequate pre-hiring review of employment verification documents and did not knowingly employ undocumented workers. Mr. Samson's testimony is summarized in paragraph 116 of Devin

Nunes and the NuStar Plaintiffs' Disputed Facts Statement. [*App. 4272-4279*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 62-69*].  Mr. Samson testified that NuStar had paperwork issues, but that these issues did not establish knowing employment of undocumented workers.

In addition to Clete Samson, the NuStar Plaintiffs presented testimony from immigration attorney Amanda Bahena.  Ms. Bahena performed an I-9 compliance audit of NuStar's immigration/employment practices in early October 2018 after Defendants published the Article.  In her review of NuStar's paperwork, Ms. Bahena missed many of the same issues that NuStar had missed when it originally reviewed the documents, which, viewed in the light most favorable, demonstrates that the NuStar Plaintiffs did not knowingly employ any undocumented workers. At her deposition, Ms. Bahena testified that when she reviewed social security cards, "[n]othing jumped out at me."  She found no instance in which NuStar employed a worker knowing that they were not authorized to work in the United States.  In a post-audit letter [*App. 1813-1814*; *R Doc. 118-77*], Ms. Bahena advised NuStar to "remember that every I-9 form must be filed out completely." Bahena also reminded NuStar that any changes made to I-9s should be made in a "different color pen" with the notation "per internal audit."  NuStar followed Bahena's advice. [*App. 4279-4280*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 69-70, ¶ 117*].

38

The NuStar Plaintiffs denied and disputed that they knowingly employed undocumented workers. They clearly and repeatedly pointed out the evidence in the record that created a genuine issue of material fact. [*App. 4272-4283, 4286, 4288, 4289-4291, 4294-4313, 4318-4324, 4332, 4343-4344*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 62-73, 76, 78-81, 84-103, 108-114, 122, 133-134, ¶¶ 116, 117, 118, 119, 120, 121, 122, 140, 146, 150, 155, 170, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 185, 186, 188, 190, 192, 193, 194, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 231, 232, 234, 235, 237, 238, 239, 240, 241, 242, 243, 246, 283, 327, 328, 329, 330, 331*]. The District Court largely ignored the testimony of the NuStar Plaintiffs' expert. In its Memorandum Opinion and Order granting summary judgment, the Court cherry-picked a few lines from Clete Samson's deposition, ignored the rest, and most certainly ignored Mr. Samson's expert report. [*App. 1140-1220*; *R Doc. 118-19 (Deposition of Clete Samson)*; *App. 1759-1778*; *R Doc. 118-71 (Plaintiffs' Rebuttal Expert Report of Clete P. Samson, Esquire)*].

The District Court erred. The issue whether Hearst and Lizza published false statements about the NuStar Plaintiffs was sufficiently contested. It is for the Jury.

## 2. *Opprobrium*

Even if the statement in the Article that NuStar knowingly employed undocumented labor was substantially true – and it is not – the defamatory implication that the NuStar Plaintiffs conspired with two (2) sitting United States Congressman to hide a federal crime exposes the NuStar Plaintiffs to more opprobrium than if the Article had been free of the defamatory implication. Thus, the defamatory implication is materially false as to the NuStar Plaintiffs.

The actual misconduct implied in the Article – conspiracy (18 U.S.C. § 371) or aiding and abetting (18 U.S.C. § 2) – is of a different type than the misconduct proven (8 U.S.C. § 1324a – knowing employment of undocumented workers). It is not the case here that the difference between the defamatory implication and the putative truth is merely one of gravity or magnitude or amount. In *Blankenship v. Napolitano*, for instance, the media defendants accused the plaintiff of being a "convicted felon", when, in truth, the plaintiff had only been convicted of a misdemeanor. The district court found that the statements were materially false. 451 F.Supp.3d 596, 617 (S.D. W. Va. 2020) ("All the defendants' statements identifying the plaintiff as a 'felon' are materially false. The term 'felon' is an objective label with a clear legal meaning – having been convicted of a crime with a term of imprisonment of more than one year. A person either is or is not a felon; there is no in between or room for 'substantial truth.' … The different

40

consequences associated with being a felon, including that 'felons can suffer numerous restrictions on their constitutional rights,' further underscore that the two categories are distinct. The court also agrees that 'society at large views a 'felon' far differently than a person who has committed an offense resulting in a misdemeanor conviction.'"). In *Behr*, the Iowa Supreme Court held that if the parties only dispute the "level" of social sting or "opprobrium," not what was said or what was literally true, the question is for the Court. 414 N.W.2d at 342. The *Behr* Court cited numerous decisions showing that where the only dispute was the "opprobrium", the court may fairly decide the question of material falsity as a matter of law. *See, e.g.,* 414 N.W.2d at 342 (citing *Forth Worth Press Co. v. Davis*, 96 S.W.2d 416, 419 (Tex.App.-Forth Worth 1936) (an accusation that a mayor of a town wasted $80,000 of the taxpayers' money held justified by proof that he wasted $17,500 because no more opprobrium is attached to the greater amount)).

Here, as in *Olson*, substantial truth offers Hearst and Lizza no defense. There is a "big difference" – in both fact and social perception – between a "Midwestern dairy" running "on undocumented labor" [*see App. 4486*; *R Doc. 131-7, Lizza 523 ("Midwestern dairies tend to run on undocumented labor")*] and an Iowa dairy owned by the parents "of a very prominent Republican Congressman" named Devin Nunes [*App. 4238-4239*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 28-29, ¶ 61)*] conspiring with members of Congress

41

to cover-up crimes. Father Callahan was unfazed by NuStar's use of undocumented labor, but when he heard the "political angle", he exclaimed "that's just corruption". [*App. 4239*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 29, ¶ 61*]. Defendants' description of the NuStar Plaintiffs' actions – conspiracy and corruption – is different from the literal truth. Accordingly, the District Court erred in ruling that there is no genuine issue of material fact as to the falsity of the defamatory implication.

### 3. *Negligence*

Despite arguing in their motion for summary judgment that the NuStar Plaintiffs have "no evidence Lizza or Hearst failed to adhere to professional journalism standards" [*App. 382*; *R. Doc. 118 at 3, ¶ 5*], Defendants cited no facts, evidence, or cases that informed the District Court of "the exact standard that is applied in evaluating negligence of a professional journalist." [*App. 4985*; *R Doc. 149 at 79*]. Defendants failed to demonstrate the absence of a genuine issue of material fact. That should have been enough for the District Court to deny the Defendants' motion on the issue of negligence.

The District Court went further, however, and reviewed the NuStar Plaintiffs' evidence. The Court impermissibly weighed that evidence and substituted itself for the jury. [*See, e.g., App. 4985*; *R Doc. 149 (Memorandum Opinion and Order), at 79 ("The alleged misstatements made by Lizza during*

42

*interviews are more opinions or hunches than false assertions of fact")*; *App. 4986*;

*R Doc. 149 (Memorandum Opinion and Order), at 80 ("At most, plaintiffs have shown defendants may have made some mistakes, but like every other profession, journalism is not held to a standard of perfection.")*].

Contrary to the District Court's view, the NuStar Plaintiffs' evidence more than establishes that Hearst and Lizza were negligent. First, the NuStar Plaintiffs show that Hearst and Lizza intentionally violated Hearst's code of ethics. Although the District Court concluded that the "NuStar plaintiffs do not … say how this code was violated" [*App. 4984*; *R. Doc. 149 at 78*], the NuStar Plaintiffs *do*, in fact, show how Hearst and Lizza violated the professional code of conduct in the reporting and publishing the Article. The NuStar Plaintiffs' evidence demonstrates the following:

> The ethical behavior that Hearst expects and requires of its journalists and its editors is the customary and usual journalistic ethics and standards of the profession. Some of the hallmarks that characterize high standards and ethical conduct in the reporting and writing of stories are that reporters must do all they can to report accurately and faithfully the stories that they prepare. The overarching goal is truth and accuracy in reporting. Reporters must do their very best to ascertain, find and report with sound sources, to discern good sources, to be sure to include those sources accounts within their reporting, to be sure that the portions of the source's information that are included in the story reflect the fullest context of the reporter's interactions with the sources. Other hallmarks are subjects of stories. A reporter must contact and attempt to include, out of fairness, comments from the subjects of reported pieces. Hearst expects the same fealty to truth in every article no matter who is the subject: the same level of care and commitment to truth and accuracy obtains."

43

[*App. 4223-4224*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 13-14, ¶ 33*]. Second, the NuStar Plaintiffs without doubt prove that Hearst and Lizza breached their professional duties by (1) lying about the story Lizza was reporting [*App. 4237-4238*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 27-28, ¶ 59*], (2) lying to sources [*App. 4225-4227 4235-4237 4238-4242, 4244-4245*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 15-17, 25-27, 28-32, 34-35, ¶¶ 35, 58, 61, 68*], (3) knowingly fabricating statements and attributing statements to sources that the sources never made, including that Source 1 brought "illegal people" to NuStar, that Source 1 asserted that NuStar was "aware of their status",[15] and that Source 2 was an "undocumented" immigrant [*App. 4238-4242, 4246*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 28-32, 36, ¶¶ 61, 71*], (4) concealing material facts from readers, including that Source 1 did not know the immigration status of the people she took "there" [*App. 4238-4242*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 28-32, ¶ 61*], (5) failing to fact-check when Source 1 brought "illegal people" "there" [*Id.*], (6) destroying notes, emails, text messages and transcripts [*App. 4224-4225, 4238-4242*; *R Doc.*

---

[15] "The audiotape reveals that Source 1 clearly and unmistakably notified Lizza that she was not aware of the immigration status of the people she sent to the farm in 2003-2004 … In spite of the audiotape evidence, the *Esquire* Article states that Source 1 asserted that 'the farm was aware of their status'. This is a knowingly false statement." [*App. 4240-4241*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 30-31, ¶ 61*]. The audiotapes provide damning evidence of journalistic fraud and wrongdoing.

130-1 (Plaintiffs' Disputed Facts Statement), at 14-15, 28-32, ¶¶ 34, 61)], (7) engaging in a fraudulent editing process in which Hearst and Lizza disregarded the audiotapes [*App. 4251-4254*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 41-42, ¶ 85)*], and (8) disregarding Devin Nunes and the NuStar Plaintiffs' retraction demands and republishing the Article knowing that the Article misrepresented the contents of the audiotape recordings of source interviews. [*App. 4254-4255, 4262-4266*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 44-45, 52-56, ¶¶ 86, 97, 99, 100)*].

The accumulation of evidence, viewed in the light most favorable to the NuStar Plaintiffs,[16] demonstrates that the issue of negligence is for the Jury.

### 4. *California Law Does Not Apply*

In tort cases such as this, Iowa applies the Restatement (Second) Conflict of Laws' "most significant relationship" test to determine which state's law governs the substantive issues in the case. *Perez v. CRST International, Inc.*, 355 F.Supp.3d 765, 768 (N.D. Iowa 2018). Factors relevant to the application of the most

---

[16] The District Court viewed the evidence in a light most favorable to the *Defendants*. [*App. 4985*; *R Doc. 149 (Memorandum Opinion and Order), at 79 ("Defendants cite facts showing they sought to investigate what they believed to be an important story involving NuStar plaintiffs and Nunes, their farm, and immigration. The facts support that defendants sought to discover the true facts through an investigation.)*]. The District Court's determination that Hearst and Lizza did not acted negligently is particularly anomalous in light of the Court's determination [*App. 5004-5006*; *R Doc. 149 at 98-100*] that Hearst and Lizza published the false and defamatory Article with actual malice.

Appellate Case: 23-2322    Page: 57    Date Filed: 08/11/2023 Entry ID: 5304985

significant relationship test include (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. *Id.* In cases such as this, where the defamation is published in multiple states via the internet, there is a rebuttable presumption that the law of the plaintiff's domicile applies. *See* Restatement (Second) Conflicts of Laws § 150(2) (1977). This presumptive choice of law does not hold true, for instance, if "with respect to the particular issue, some other state has a more significant relationship to the issue or the parties". *Davis*, 580 F.Supp. at 1091 (citations omitted); *Rudin v. Dow Jones & Co. Inc.*, 510 F.Supp. 210, 216 (S.D.N.Y. 1981) ("where the plaintiff has a significant relationship to a state other than the state of his domicile, other factors must be considered in determining which law to apply.").

The District Court erred in its application of the Restatement factors. In this case – considering the Article emanated from New York, the Article's "Midwestern" content and focus on an Iowa dairy, the local sources and subject matter, and the fact that Devin Nunes suffered harm to his reputation in multiple states, including the District of Columbia where he chaired the House Intelligence Committee and where, at the time Lizza republished the Article in November 2019, he was defending the President from an impeachment inquiry – the State

46

with the most significant relationship to the occurrence and the parties is Iowa.[17]

## 5. *Hearst Is Liable For Lizza's Republications*

The summary judgment record does not conclusively establish that Lizza no longer worked for Hearst when he republished the Article in November 2019. His deposition testimony was equivocal. He only admitted that he started working for Politico in "late 2019". [*App. 4227*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statements), at 17, ¶ 37*]. On this ambiguous record, and without further evidence, a Jury could still find Hearst liable.

More importantly, as an "original defamer", Hearst is liable for Lizza's republication under either Iowa or California law because it was "reasonably foreseeable" that Lizza would republish. *Brown*, 193 N.W.2d at 555; *Belcher v Little*, 315 N.W.2d 734, 738 (Iowa 1982) (citing and quoting *McKinney v. County of Santa Clara*, 110 Cal.App.3d 787, 168 Cal.Rptr. 89, 94 (Cal.App. [1st Dist.] 1980) ("The rationale for making the originator of a defamatory statement liable for its foreseeable republication is the strong causal link between the actions of the originator and the damage caused by the republication.")). On the issue of reasonable foreseeability, Devin Nunes and the NuStar Plaintiffs introduced

---

[17]     *Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618 (8th Cir. 2004) is inapposite. *Fuqua* did not involve New York media defendants and, unlike this case, in *Fuqua* the factors listed in Restatement § 145 were "insufficiently significant" to overcome the presumption of § 150.

evidence of the penchant and long history of republications of the Article by Lizza, Lizza's girlfriend (Olivia Nuzzi), Lizza's editor (Jay Fielden), and by Hearst itself. [*App. 4567-4575*; *R Doc. 132-2*]. Indeed, the evidence shows that Hearst and Lizza republished the Article ***whenever*** Devin Nunes was "in the news". For instance, on December 28, 2018, the same day the McClatchy newspaper ran a 2018 year-end review of stories about Devin Nunes, Lizza republished the Article reminding his audience that the "Nunes dairy farm, in Iowa, has for years run on undocumented labor, as reported here [linking directly to the Article]." [*App. 4572*; *R Doc. 132-2, p. 7*]. On March 28, 2019, after Special Counsel Robert Mueller released his report on allegations that the Trump campaign had colluded with Russia, Hearst republished the Article as a "friendly reminder" of Devin Nunes' "hypocrisy". [*App. 4573*; *R Doc. 132-2, p. 8*].[18] On November 20, 2019, when Devin Nunes was "in the news" during the first impeachment inquiry launched by House Democrats, Lizza and Hearst were at it again. And, on November 21, 2019, Lizza again republished the Article, emphasizing that its "core finding" was that Devin Nunes's "family's dairy used undocumented immigrants" and tagging **@ICEgov**. [*App. 4574-4575*; *R Doc. 132-2, pp. 9-10*; *App. 4234*; *R Doc. 130-1*

---

[18] In the Article, Hearst and Lizza falsely accused Devin Nunes of working "closely with the White House to investigate the FBI rather than the FSB (the KGB's successor), most famously by attempting to undermine the Russia investigation by releasing a partisan report—the so-called 'Nunes memo'". [*JA, p. 4479 (Article – Lizza 516)*].

*(Plaintiffs' Disputed Facts Statement), at 24-25, ¶ 56)*].  The fact that Lizza was a serial republisher with an axe to grind against Devin Nunes and the NuStar Plaintiffs was well-known to Hearst.    Republication was most certainly foreseeable.

### 6.    *Lizza Intended To Convey The Defamatory Implication*

In *Nunes*, 12 F.4th at 899, the Court outlined many reasons why a Jury could find that Hearst and Lizza intended or endorsed the defamatory implication.  The Jury could simply read the Article and consider the manner in which it presents the relationship between the parties, NuStar's use of undocumented labor and the "massive political hypocrisy". [*App. 4494*; *R Doc. 131-7 at 17, Lizza 531*].  Devin Nunes and the NuStar Plaintiffs have introduced substantial evidence, including the Article, to prove this point.  The District Court erred in concluding that there was no genuine issue of material fact relating to Defendants' intention to convey or endorse the defamatory implication.

### 7.    *Devin Nunes's Damages*

Authorities agree that:

"[t]he law of defamation embodies the public policy that individuals should be free to enjoy their reputation unimpaired by false and defamatory attacks. An action for defamation or slander is based upon a violation of this right.

The gravamen or gist of an action for defamation is damage to the plaintiff's reputation.  It is reputation which is defamed, reputation which is injured, and reputation which is protected by the law of defamation.

49

Defamation is an impairment of a relational interest; it denigrates the opinion which others in the community have of the plaintiff and invades the plaintiff's interest in the reputation and good name. A cause of action for defamation is based on the transmission of derogatory statements, not on any physical or emotional distress to plaintiff which may result. Defamation law protects interests of personality, not of property."

*Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 221 (Iowa 1998) (quoting 50 Am.Jur.2d *Libel and Slander* § 2, at 338-330 (1995)).

Over the course of his long career in Congress, Devin Nunes cultivated a stellar reputation. Not even Hearst disputes that. On September 30, 2018, he was Chairman of the House Permanent Select Committee on Intelligence. He also served on the House Ways and Means Committee, and was ranking Republican member of the Subcommittee on Health. [*App. 4219, 4350-4351*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 9, 140-141, ¶¶ 17, 18, 365, 366, 367, 368, 369, 370, 371*; *App. 4430, 4450-4451*; *R Doc. 131-3 (DGN Dec.), at 2, 22-23, ¶¶ 6, 50)*]. He proved that Hearst and Lizza published and republished the false defamatory implication over various media (online, in print and via social media) to millions of subscribers and followers over a period of years. He proved that he suffered actual injuries and injury to reputation. He proved that Hearst and Lizza published the false and defamatory implication with actual malice. Hearst and Lizza never showed contrition for their bad-faith, intentional, and abusive conduct.

Appellate Case: 23-2322    Page: 62    Date Filed: 08/11/2023 Entry ID: 5304985

To the contrary, whenever Devin Nunes was "in the news", they used their publishing empire to call in more fire.[19]

Devin Nunes submitted evidence to prove four categories of damages caused by the false and defamatory implication:

1. **Actual damages and injuries**, including public shame, insult, personal humiliation, embarrassment, mental anguish and suffering.

   [*App. 4366-4367*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 156-157, ¶¶ 439, 440, 441, 442)*; *App. 4442, 4446, 4451-4452*; *R Doc. 131-3 (DGN Dec.), at 14, 18, 23-24, ¶¶ 32, 37, 51-52)*].

   *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974) (adopted in *Jones v. Palmer Communications, Inc.*, 440 N.W.2d 884, 900 fn. 5 (Iowa 1989) ("*Gertz* articulated an expansive definition of actual damages.").

2. **Impairment of reputation and standing in the community**, including (a) millions of tweets, retweets, quote tweets, replies and other vicious statements published on the Internet and Twitter by people who had read the Article, (b) death threats and other threats by people who had read the Article, and (c) Devin Nunes was no longer permitted by Gerald Nunes to give tours of the family farm in California because of the Article.

---

[19] *Compare Hoffmann v. Clark*, 975 N.W.2d 656, 667-668 (Iowa 2022) ("Clark disseminated his false statements over social media and podcasts to tens of thousands of people. He said that Hoffmann was dishonest and engaged in bribery. He falsely reported that Hoffmann knowingly sold dangerous products out of greed … Hoffmann also had to watch his reputation be 'torn apart online' … Hoffmann took years to develop his reputation. As a result of what Clark put him through, Hoffmann was 'stressed to the max.' He had trouble sleeping. This was 'overwhelming' and 'consuming.'").

*[App. 4351-4352, 4366-4367; R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 141-142, 156-157, ¶¶ 372, 441); App. 4443-4446, 4446-4448; R Doc. 131-3 (DGN Dec.), at 15-20, ¶¶ 35, 36, 38, 39, 44); App. 4457, 4460-4463; R Doc. 131-4 (AN Dec.), at 4, 7-10, ¶¶ 10, 17, 21].*

3.  **Special damages**, including impact on the 2018 Congressional election, impairment of future career opportunities, and a financial impact on his ability to fundraise.

    *[App. 4353-4354, 4357; R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 143-144, 147, ¶ 381, 399); App. 4442, 4448-4449; R Doc. 131-3 (DGN Dec.), at 14, 20-21, ¶¶ 33, 45].*

4.  **Punitive damages** against both Hearst and Lizza.

    *[App. 5004-5006; R Doc 149 at 98-100 ("the Court finds a genuine issue of material fact as to actual malice.")].*

Punitive damages exist to "punish and deter the defendant and to deter like-minded individuals from committing similar acts." *Ryan v. Arneson*, 422 N.W.2d 491, 496 (Iowa 1988). Punitive damages may be awarded even where actual damages were shown and not awarded. *Wilson v. IBP, Inc.*, 558 N.W.2d 132, 147 (Iowa 1006) (citation omitted).

"Punitive damages are recoverable when the defendant acted with actual or legal malice." *Atzen v. Atzen*, 913 N.W.2d 628, at * 11 (Iowa App. 2018) (unpublished) (quoting *Cawthorn v. Catholic Health Initiatives Iowa Corp.*, 743 N.W.2d 525, 529 (Iowa 2007)); *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 386 (Iowa 2001) ("To establish the requirement of 'willful and wanton disregard for the rights or safety of another,' a plaintiff must show that the defendant's conduct constituted actual or legal malice. 'Actual malice is characterized by such factors as personal spite, hatred, or ill will.' 'Legal malice is shown by wrongful conduct committed or continued with a willful or reckless disregard for another's rights.'") (quotations omitted).

52

The injury to Devin Nunes's reputation was most deeply felt and keenly evidenced by the impact the Article had on his family.  When asked at his deposition if he was a supporter of Devin Nunes's' political career, Devin's uncle Gerald testified:

> "after you guys write this article, the harassment I got, I separated myself from him [Devin Nunes] because I don't want to be associated with you guys demeaning him, and I get people harassing me, and it affected our relationship, and yeah … I get harassed in town.  I get harassed on the golf course and I don't need it, so my best thing is I stay away -- stay away because I don't want the association, and I feel it's giving me a bad name."

[*App. 4366-4367*; *R Doc. 130-1 (Plaintiffs' Disputed Facts Statement), at 156-157, ¶ 441) (quoting App. 1265-1282*; *R Doc. 118-21 (Gerald Nunes Tr., 23:18-22; 24:10-25:24; 53:9-24)*].  In *Cockram v. Genesco, Inc.*, the Court of Appeals ruled that the evidence was sufficient to allow a reasonable jury to find actual reputational harm flowing from the defendant's statements.  The plaintiff argued that there were multiple pieces of evidence indicating that her reputation was harmed by the defendant's statements.  "She stated that '[p]eople posting comments to media stories carrying Genesco's statement would call me racist.' For example, one person writing a comment in response to an online article containing Genesco's first statement said that a 'racist teenager entered the words on their [sic] own' and was 'rightfully fired.'  Cockram also received numerous messages containing threats and accusations of racism after Genesco released the first statement.  Cockram claims that these 'accusations and threats made [her]

afraid and [she] moved out of [her] apartment and placed [her] child with [her] parents temporarily.' Cockram's father confirmed that Cockram was so concerned about the threats that she asked him to allow her daughter to live with him for a period. Furthermore, Cockram's father stated that his family's friends and acquaintances contacted him and questioned whether Cockram was racist after the stories with Genesco's statements appeared. Thus, we cannot say as a matter of law that Cockram cannot show actual reputational harm". 680 F.3d at 1054. Likewise, in *Lundell Mfg. Co., Inc. v. American Broadcasting Companies, Inc.*, the Court found that there was sufficient proof of actual damages. A witness testified that just before the broadcast, Lundell was the industry leader. Several witnesses testified that "after the broadcast, interest in the machine vanished … This evidence is more than sufficient to sustain the jury's finding that Lundell was damaged by the story." 98 F.3d 351, 364-365 (8th Cir. 1996).

The District Court erred in finding that there was no genuine issue of material fact concerning Devin Nunes's damages. Even without the disclosed witnesses, Devin Nunes produced sufficient evidence to prove that publication and republication of the Article damaged him.

**B.** ***PRECLUSION OF THE DISCLOSED WITNESSES***

Although a district court has "wide latitude in imposing sanctions for failure to comply with discovery" *Aziz v. Wright*, 34 F.3d 587, 589 (8th Cir. 1994), the

"court's discretion narrows as the severity of the sanction or remedy it elects increases." *Wegener*, 527 F.3d at 692. For example, the Eighth Circuit has repeatedly found that "exclusion of evidence is a harsh penalty and should be used sparingly." *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 645 (8th Cir. 2022) (quotation marks and citations omitted).

Preclusion of the disclosed witnesses, who were made known 28 days prior to the discovery cut-off and seven (7) ***months*** before trial, is an abuse of discretion. Devin Nunes explained the reason for the disclosure of the witnesses after Defendants' disclosure of a damages expert. Hearst and Lizza had 28 days to contact the witnesses. They did nothing. They can hardly claim prejudice under these circumstances. Further, after counsel for Devin Nunes agreed to narrow the list to 5 witnesses, counsel for Hearst and Lizza still sat on their hands. Finally, any depositions of the disclosed witnesses could have been taken well ahead of the deadline to file summary judgment motions and certainly well ahead of the April 2023 trial date.

The disclosed witnesses, including colleagues of Devin Nunes in Congress who were painfully aware of the impact of the Article on Devin Nunes' reputation, were important especially in light of the statements being proffered by Defendants' newly designated damages expert. Preclusion was unjustifiably harsh and unfair. Litigation and trials are designed to get at the truth, and striking important

disclosed fact witnesses that may assist the Jury in arriving at the truth would interfere with that goal. On remand, the District Court should permit Hearst and Lizza to depose, if they chose, the 5 disclosed witnesses proffered by counsel for Devin Nunes – Randy Feenstra, Trey Gowdy, George Holding, Kevin McCarthy and John Ratcliffe.

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated above, the Court of Appeals should reverse the District Court's Judgment, and remand the case for a trial on the merits of Devin Nunes's and the NuStar Plaintiffs' claims of defamation and defamation by implication.

## LOCAL RULE 28A(h) STATEMENT

In accordance with Local Rule 28A(h)(2), Counsel for Plaintiffs-Appellants certifies that this Brief and the Addendum have been scanned for viruses and that the Brief and Addendum are virus-free.

DATED:     August 10, 2023

Respectfully Submitted,

DEVIN G. NUNES
NUSTAR FARMS, LLC
ANTHONY NUNES, JR.
ANTHONY NUNES, III


By:   */s/ Steven S. Biss*
     Steven S. Biss (VSB # 32972)
     300 West Main Street, Suite 102
     Charlottesville, Virginia 22903
     Telephone:  (804) 501-8272
     Facsimile:  (202) 318-4098
     Email:  stevenbiss@earthlink.net

     William F. McGinn #24477
     McGINN LAW FIRM
     20 North 16th Street
     Council Bluffs, Iowa 51501
     Telephone: (712) 328-1566
     Facsimile: (712) 328-3707
     Email: bmcginn@themcginnlawfirm.com

     *Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2023 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By:   */s/ Steven S. Biss*
        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:  (804) 501-8272
        Facsimile:  (202) 318-4098
        Email:  stevenbiss@earthlink.net

        William F. McGinn #24477
        McGINN LAW FIRM
        20 North 16th Street
        Council Bluffs, Iowa 51501
        Telephone: (712) 328-1566
        Facsimile: (712) 328-3707
        Email: bmcginn@themcginnlawfirm.com

        *Counsel for Plaintiffs-Appellants*

58

## <u>CERTIFICATE OF FILING AND COMPLIANCE</u>

I hereby certify that on August 10, 2023, I caused Appellants' Opening Brief and Addendum to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to counsel for the Appellees.

I further certify that on August 10, 2023, I caused the required copies of Appellants' Brief and Addendum to be served on counsel for the Appellees.

In accordance with FRAP 32(a)(7)(B), I further certify that Appellants' Brief complies with the type-volume limitation and that the total number of words, as measured by the word count of the word-processing system used to prepare the brief, is 12,752.  Appellants used Microsoft Office Word 2019 to prepare the Brief. The Brief uses a proportionally spaced face (Times New Roman, 14-Point).

By:  */s/ Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:   (804) 501-8272
Facsimile:   (202) 318-4098
Email:    stevenbiss@earthlink.net

*Counsel for Plaintiffs-Appellants*

59