Devin G. Nunes; NuStar Farms, LLC; Anthony Nunes, Jr.; Anthony Nunes III,

*Plaintiffs - Appellants*

v.

Ryan Lizza; Hearst Magazines, Inc.; Hearst Magazine Media, Inc.,

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Northern District of Iowa - Western
_____

Submitted: September 25, 2024
Filed: January 27, 2025
_____

Before COLLOTON, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.
_____

COLLOTON, Chief Judge.

    Devin Nunes, a former Member of Congress from California, sued journalist Ryan Lizza and Hearst Magazine Media, Inc., for defamation. The action was based on an article—written by Lizza and published by *Esquire*—about Nunes, his family, and a dairy farm, NuStar Farms, LLC, that was owned by members of his family. NuStar Farms, along with Anthony Nunes, Jr., and Anthony Nunes III, also sued

Lizza and Hearst, alleging defamation based on the same article. The district court[*] granted summary judgment for the defendants, and we affirm.

I.

On September 30, 2018, *Esquire* (then owned by Hearst) published an online article, written by Lizza, entitled "Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret." Viewed in the light most favorable to the plaintiffs, the article implicitly accused Nunes and his family of conspiring to hide the fact that NuStar Farms employed undocumented labor. The article was republished in the November 2018 print edition of *Esquire* magazine, this time entitled "Milking the System."

The article included statements about Nunes and his family hiding that the family farm moved from California to Iowa over a decade earlier. The article suggested that the family concealed the move in part because "Midwestern dairies tend to run on undocumented labor." The article quoted two sources asserting firsthand knowledge that NuStar farms hired undocumented labor. One source personally sent undocumented workers to the farm. The other source, an undocumented immigrant, claimed to have worked at NuStar. Viewed in the light most favorable to the plaintiffs, the article left the reader with the impression that Nunes and his family were conspiring to hide a "politically explosive secret" that the farm had moved to Iowa and employed undocumented labor.

On September 25, 2019, Nunes served Lizza and Hearst with a notice and demand for retraction. Nunes called for Lizza and Hearst to remove several statements in the article and deactivate all hyperlinks to and tweets of the article. Lizza and Hearst declined these requests.

---

[*]The Honorable C.J. Williams, then District Judge, now Chief Judge, United States District Court for the Northern District of Iowa.

Appellate Case: 23-2322     Page: 2     Date Filed: 01/27/2025 Entry ID: 5478473

Five days later, Nunes sued Lizza and Hearst, alleging common-law defamation and conspiracy. The complaint alleged express defamation based on eleven assertedly false statements in the article. The lawsuit also claimed defamation by implication, alleging that the article falsely implies that Nunes "conspired or colluded with his family and with others to hide or cover-up" that NuStar Farms "employs undocumented labor."

Lizza and Hearst moved to dismiss Nunes's complaint. The district court granted the motion. This court affirmed the district court's dismissal of the express defamation claim but reversed and remanded for further proceedings on the claim for defamation by implication. *Nunes v. Lizza*, 12 F.4th 890 (8th Cir. 2021). On remand, Nunes filed an amended complaint, this time bringing only a claim for defamation by implication.

On January 16, 2020, NuStar Farms, Anthony Nunes, Jr., and Anthony Nunes III brought a new lawsuit against Lizza and Hearst based on the article. The NuStar plaintiffs alleged both express defamation and defamation by implication. The district court consolidated the new case with Devin Nunes's action.

The district court ultimately granted summary judgment for Lizza and Hearst. The court ruled that Nunes and the NuStar plaintiffs each failed to create a genuine dispute of material fact on certain elements of their defamation claims. Nunes and the NuStar plaintiffs appeal the dismissals. We review the district court's order *de novo*. *Doe v. Hagar*, 765 F.3d 855, 860 (8th Cir. 2014). Summary judgment is appropriate when the evidence viewed in the light most favorable to the nonmoving party presents no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

II.

A.

Nunes contends that the district court erred in concluding that his implied defamation claim failed on several different elements. The district court applied California law to this claim, and Nunes concedes on appeal that California law applies. We conclude that Nunes presented insufficient evidence that he is entitled to damages, so we need not address other elements of his claim.

A defamation claim under California law requires a plaintiff to prove (1) a publication that is (2) false, (3) defamatory, (4) and unprivileged, and (5) that causes special damage. *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007); *see also* Cal. Civ. Code § 45a (West 2022). California Civil Code § 48a governs the types of damages a plaintiff may recover in a defamation action: special, general, and exemplary damages. Special damages are "all damages" to the plaintiff's "property, business, trade, profession, or occupation." *Id.* § 48a(d)(2). General damages, on the other hand, are "loss of reputation, shame, mortification, and hurt feelings." *Id.* § 48a(d)(1). Exemplary damages are additional damages recovered "for the sake of example and by way of punishing a defendant." *Id.* § 48a(d)(3).

To recover "general damages" and "exemplary damages," the plaintiff must serve the publisher with a "written notice specifying the statements claimed to be libelous and demanding that those statements be corrected." Civ. § 48a(a), (d). The notice and demand must be served within twenty days after the plaintiff discovers the publication of the defamatory statements. *Id.* § 48a(a). If a plaintiff does not follow this process, then he may recover only "special damages." *Id.*

The district court correctly concluded that Nunes is eligible, at most, to recover only special damages. Nunes failed to follow California's notice and demand statute

-4-

for the recovery of general and exemplary damages. The article was published on September 30, 2018. Nunes sent a demand to Lizza and Hearst almost a year later, and there is no showing that he first discovered the article within twenty days before the demand. *See id.* § 48a(a). Therefore, Nunes may not recover general or exemplary damages, and the case turns on whether he suffered special damages.

Special damages "encompass only economic loss" and "must be pled and proved precisely." *Gomes v. Fried*, 186 Cal. Rptr. 605, 614 (Cal. Ct. App. 1982). The plaintiff must provide evidence of "the nature and extent of the loss" to recover. *Pridonoff v. Balokovich*, 228 P.2d 6, 8 (Cal. 1951). "A general allegation of the loss of a prospective employment, sale, or profit will not suffice." *Id.* Nunes claims that he suffered special damages because the article impaired his future career opportunities, impacted his ability to raise funds, and damaged his election campaign for Congress in 2018.

Nunes prevailed in his re-election campaign of 2018 and thus has not shown damage to his ability to secure re-election. He also has not presented sufficient evidence that his ability to raise funds was diminished as a result of the article. While he claims that two to three dozen companies declined to give money to his campaign, he produced no evidence to support this assertion—not even the names of the alleged companies. Instead, the evidence showed that Nunes's campaign funding steadily increased each election cycle. From 2014 to 2016, Nunes received over $2 million in funding. From 2016 to 2018, he accumulated nearly $13 million. And from 2018 to 2020, he collected over $26 million. Nunes therefore did not produce evidence of his diminished ability to raise campaign funds.

Nunes also failed to present sufficient evidence that the article impaired his prospects for employment. He states that he should have enjoyed more employment opportunities as a former Member of Congress with attendant experience. But general allegations of loss of prospective employment are insufficient to prove special

-5-

damages. *Pridonoff*, 228 P.2d at 8. Nunes did not produce evidence that he sought any particular position or present evidence of employment opportunities that were available to other former Members of Congress who were similarly situated. *See id.* The only evidence regarding Nunes's employment shows that after he retired from Congress, he became the chief executive officer of Trump Media & Technology Group, Corp., with a starting salary of $750,000. The job, Nunes admits, was secured "based on the strength of Congressman Nunes's reputation." Nunes thus did not produce evidence to support his allegation that he suffered economic loss as a result of the article.

For these reasons, Nunes failed to present a submissible case on the issue of damages. The district court properly granted summary judgment for the defendants on Nunes's claim for defamation by implication.

B.

The NuStar plaintiffs also challenge the district court's order granting summary judgment on their defamation claims. The parties agree that Iowa law applies to these claims, but they debate whether the NuStar plaintiffs submitted sufficient evidence on several elements. We conclude that there is insufficient evidence to create a genuine dispute of material fact on the issue of injury and affirm the district court's judgment on that basis.

To succeed in an action against a media defendant under Iowa law, a plaintiff who is a private figure must prove "(1) publication (2) of a defamatory statement (3) concerning the plaintiff (4) in negligent breach of the professional standard of care (5) that resulted in demonstrable injury" to the plaintiff. *Johnson v. Nickerson*, 542 N.W.2d 506, 511 (Iowa 1996). A plaintiff must show "actual *reputational* harm when suing a media defendant, and not merely emotional distress or humiliation,

-6-

before he or she may recover for any parasitic damages such as personal humiliation or mental anguish." *Bierman v. Weier*, 826 N.W.2d 436, 447 (Iowa 2013).

The NuStar plaintiffs argue that their business suffered economic harm after the article was published. They claim that one person stopped doing business with NuStar Farms as a result of the article. But the NuStar plaintiffs failed to produce evidence that the suggested business relationship existed, let alone that the other party discontinued the association. This bare assertion of lost business is insufficient to establish a cognizable injury.

To counter the claim of injury, Lizza and Hearst produced evidence that NuStar's revenues and profits increased after the article's publication. Lizza and Hearst also produced an expert who determined that the NuStar plaintiffs did not suffer lost profits or diminution of business value. The NuStar plaintiffs respond that other factors contributed to the increases in revenues and profits. Once Lizza and Hearst produced evidence to support their motion, however, the NuStar plaintiffs were required to set forth specific facts to establish a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1). They failed to do so, and the record is insufficient to support a finding that the NuStar plaintiffs suffered economic harm.

The NuStar plaintiffs also argue that they suffered reputational harm. They point to evidence that the farm started to receive threatening phone calls after the article was published. The plaintiffs also produced evidence of negative comments and reviews about NuStar from users of social media.

To prove injury to reputation, however, a plaintiff must show that the plaintiff had a particular reputation before the article and that people thought worse of the plaintiff after reading the article. *Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 225 (Iowa 1998). In *Schlegel*, the Iowa Supreme Court held that a plaintiff did not establish harm to reputation when a newspaper incorrectly reported that the plaintiff

had declared bankruptcy because the plaintiff failed to present evidence of a good reputation before the report. *Id.* The court explained that "[a]lthough we have every reason to assume [the plaintiff] is well regarded in his community and had a good reputation before the false report, he presented no evidence of that good reputation." *Id.* Even though the plaintiff presented testimony from witnesses who read the news story, none testified that the plaintiff had a particular reputation before the report. *Id.* Therefore, the plaintiff "failed to produce substantial evidence of damage to reputation." *Id.* at 226.

As in *Schlegel*, the NuStar plaintiffs did not produce evidence of a good reputation before the article was published. While they presented testimony and documents showing that unidentified callers and social media users read the article and thought ill of NuStar, they did not present evidence that the company or its leaders enjoyed any particular reputation before the article was published. Because they presented no evidence of a preexisting good reputation that could have been damaged by the article, the NuStar plaintiffs failed to create a genuine dispute for trial about whether they suffered a cognizable injury. Accordingly, the district court properly granted summary judgment for the defendants.

\*       \*       \*

The judgment of the district court is affirmed.

_____

Appellate Case: 23-2322     Page: 8     Date Filed: 01/27/2025 Entry ID: 5478473